Grafton,
No. 4595.

RAY C. JOHNSON *v*. ARTHUR W. SHAW.

Argued November 5, 1957.

Decided December 18, 1957.

*Sheehan, Phinney, Bass, Green & Bergevin* (*Mr. Green* orally), for the plaintiff.

*Upton, Sanders & Upton* (*Mr. Sanders* orally), for the defendant.

DUNCAN, J. In ordering that the defendant's structure be removed from the area within two hundred feet of the highway, the Trial Court found that it violated the restriction in the defendant's deed, and that the restriction "was intended to benefit the remaining land of the grantor [Lyman] by prohibiting the erection of buildings attracting overnight tourists business which would be so located that the view that a northbound tourist would have of cabins located on the northerly tract would be blocked or obstructed by competitive cabins on the southerly tract." To this and to other findings referring to cabins on the land now owned by the plaintiff, the defendant excepted. In support of these exceptions, he points out that there was no evidence that at the time of Mrs. Lyman's conveyance of the defendant's land there were any cabins on the tract on the east side of the highway which she then retained; and that the only evidence with respect to such cabins was the defend-

ant's testimony, introduced by the plaintiff, that these cabins were erected in 1940 or 1941, which was after Mrs. Lyman had sold all of her holdings.

While the record tends to support this contention by the defendant the order of the Trial Court is not to be set aside for that reason. Under the circumstances surrounding the transaction including the restriction with respect to a filling station and the provision for a "first refusal" in case of resale, the Court properly concluded that the restrictions were imposed for the benefit of the property which Mrs. Lyman retained. Mt. Prospect Lodge is situated close by the highway. Mrs. Lyman saw fit to retain ownership of the land immediately across from the lodge, and to impose restrictions upon what she conveyed, designed to prevent the erection of any filling station within three hundred feet south of the "northerly point" of the land conveyed, and of any "overnight cabins" short of two hundred feet from the highway over the entire frontage of several hundred feet to the south.

Whether the restrictions were imposed because the grantor thought that preservation of the prominence of her hotel would serve to attract a larger clientele than might otherwise be the case, or whether she contemplated at some time erecting cabins or other structures across the street from it, which might be less attractive or profitable because of cabins or a filling station to the south, her reasons for imposing the restrictions are not determinative of the rights of the parties. The essential finding that the restrictions were imposed for the benefit of the grantor's remaining land was properly made by the Trial Court. II American Law of Property 417. Restatement, Property, s. 544, *comment* (c).

The restrictions were necessarily binding upon the immediate grantees. The primary issue is whether the restriction respecting the erection of cabins may be enforced by the plaintiff as a subsequent owner of land intended to be benefited. In granting the relief sought by the plaintiff, the Court ruled that it may.

Since the deed to the defendant included the restriction in question, his rights are plainly subject to it. While not in the form of a covenant on his part, the restriction is enforceable in equity by a party entitled to its benefit. *Pratte* v. *Balatsos*, 99 N. H. 430, 433. The plaintiff is admittedly a successor in interest to Mrs. Lyman. Since there is no evidence that the restriction was for the benefit of any one part of the land retained, more than any other, the plaintiff is entitled to enforce it with respect to the land

which he now owns. Restatement, Property, s. 551. 3 Tiffany, Real Property (3rd *ed.*) s. 865. It must be taken to have "touched and concerned" every part of the land retained by Mrs. Lyman. The benefit will run with the land, if not at law, at least in equity. *Burbank* v. *Pillsbury*, 48 N. H. 475, 482.

In urging that the plaintiff is not entitled to enforce the restriction the defendant relies upon the absence of requirements laid down in *Nashua Hospital* v. *Gage*, 85 N. H. 335, 339, for the creation of reciprocal rights among grantees of lots constituting a part of a general scheme of development. Such rights are not sought to be established in the pending action. On the contrary we are here concerned merely with the enforcement of the benefit of a restriction to which the defendant's rights are admittedly subject, by a successor in title to land intended to be benefited. Enforcement of such a right in equity is clearly permissible. *Burbank* v. *Pillsbury*, *supra*; *Bauby* v. *Krasow*, 107 Conn. 109. See 14 Am. Jur., Covenants, Conditions and Restrictions, s. 314; 26 C. J. S., Deeds, *pp.* 1140-1142. The Court therefore did not err in ruling that it may be enforced by the plaintiff.

In concluding that the restriction may be enforced by the plaintiff, the Trial Court reached the only conclusion of which the evidence fairly admits. *Bauby* v. *Krasow, supra,* 115. If it was error to find that the restriction was designed to protect cabins on the northerly lot because no such cabins existed or were shown to have been planned, the error was harmless. Regardless of the exact purpose behind it, the restriction was patently intended to benefit the land retained. The right to the benefit as to the northerly tract now belongs to the plaintiff and may be enforced by him if the restriction has been violated.

The defendant contends that it has not. On any construction of the term "overnight cabins," he maintains, his motel is not within the restriction. In this connection the Trial Court ruled that it is "the real character of the building that should be considered rather than its name." He found that the defendant's building is used in competition with overnight cabins, that it provides the same accommodations, attracts the same trade, and that the "fact that the units are joined together under one roof does not change their essential character." These findings and rulings are sustainable upon the record.

The words "overnight cabins" were not words of art, and the question is what the parties intended by them. It seems plain that

Mrs. Lyman intended to prevent the erection of structures designed for use by motorists for overnight sleeping quarters which could properly be regarded as "cabins," or "small houses." Webster's New International Dictionary (2nd *ed.*) *p.* 370. The quarters provided by the defendant's motel could reasonably be found to answer that description. *Cf. Gillis* v. *Bailey,* 17 N. H. 18, 21. The fact that the roof extended to more than one "small house" or that there were common walls between such "houses" did not make them any less "cabins," or the structure any more an apartment house, or "modern development of an inn or hotel without the service of meals" as the defendant describes it. A "motel" may reasonably be considered to be a building which "merely furnishes the transient guest with sleeping quarters and bath and toilet facilities, with linen service and a place to park his car." *Van Der Heide* v. *Zoning Board of Appeals,* 123 N. Y. S. (2d) 726, 730. These are likewise the essential characteristics of "overnight cabins."

The defendant moved to dismiss upon the ground that there was no evidence that the plaintiff was entitled to an injunction or an order for removal of the structure, and upon the ground that the evidence conclusively established that he was not. The order of the Trial Court appears to rest upon the findings that the defendant's motel obstructs the view of the plaintiff's cabins which is available to northbound tourists. While the bill alleged serious depreciation in the value of the plaintiff's premises, and irreparable damages, the record contains no evidence bearing upon the former allegation, and the latter appears to find its chief support, apart from the view and the photographs in evidence, in the testimony drawn from the defendant that in the cabin business it is desirable that the property be "seen as far away as possible on the travelled way" and that the view of the plaintiff's cabins is "partially" obstructed by the motel. The defendant's exceptions raise the issue of whether the relief sought should have been denied as a matter of law.

It has long been settled that injunctive relief is one of "the peculiar and extraordinary powers" of equity (*Bassett* v. *Company,* 47 N. H. 426, 437) exercised only when warranted by "imminent danger of great and irreparable damage." *Wason* v. *Sanborn,* 45 N. H. 169, 171. "Hardship [upon the defendant] may be a sufficient ground for withholding specific relief" (*Manchester Dairy System* v. *Hayward,* 82 N. H. 193, 206) and "theoretical injury . . .

does not furnish ground for interposition by injunction." *Dana* v. *Craddock*, 66 N. H. 593, 595. See *Hunter* v. *Carroll*, 64 N. H. 572; Restatement, Property, ss. 561-564; Torts, s. 941.

No express finding was made upon the issue of whether the injunctive relief granted "would be equitable in view of all the circumstances of the particular case" (*Manchester Dairy System* v. *Hayward, supra,* 207; *Dunfey Realty Co.* v. *Enwright,* 101 N. H. 195, 198) although the record warranted a finding that it would be. A finding to that effect would ordinarily be implied, in the absence of indication that it was not in fact made. *Cf. Hatch* v. *Hillsgrove,* 83 N. H. 91, 98. However in view of the evident hardship which the mandatory injunction will impose upon the defendant, the absence of an express finding by the Court and of any substantial consideration at the trial of the extent of the plaintiff's damage raises doubt as to whether the necessary supporting finding was intended to be implied. We consider that justice requires opportunity to be afforded for clarification of the issue, and leave will accordingly be granted the parties to apply for a finding with respect to it. *Hatch* v. *Hillsgrove, supra.* If the order for removal is found inequitable under all the circumstances, the petition should be dismissed. If found to "subserve the ends of justice" (*Eaton* v. *Eaton,* 64 N. H. 493, 498), the injunction will stand.

*Exceptions overruled nisi.*

All concurred.