Belknap,
No. 5330.

FRANK R. VARNEY

*v.*

MELMON FLETCHER & a.

Argued June 1, 1965.
Decided October 29, 1965.

*James W. Doherty* and *David R. Decker* (*Mr. Decker* orally), for the plaintiff.

*Normandin, McIntyre, Cheney & O'Neil* (*Mr. F. A. Normandin* orally), for the defendants.

LAMPRON, J. In July 1950, Frank R. Varney, a real estate developer, bought a large tract of land adjacent to the boundary line of Gilford and Laconia. It was then a milk farm, the Collins' farm, on which was located a very large colonial type house with three apartments on the second floor, and a large barn across the street from the house. There were no restrictions on the use of the land or the buildings.

Plaintiff moved into the downstairs of the house and started developing the property, renamed Collins' Heights Development. He first laid out a block of 18 lots, in 1950, which later was extended to cover 37 lots, as shown on a plan entitled "Collins' Heights Section 1 Gilford N. H. . . . March 1952, N. McCrillis Sur." Thereafter by additional layouts and plans the number of lots in Collins' Heights was increased to about 100.

The defendants own lots #5 and #6 which were included in the first layout of section I in 1950 and in its extended layout in 1952. These lots were conveyed by the plaintiff to Perron in July 1951, and, after building a house thereon, by him to the defendants in October 1951. Plaintiff's conveyance to Perron contained certain restrictions which were incorporated by reference in Perron's deed to the Fletchers. These restrictions were binding on the grantees, their heirs and assigns until October 1, 1960, and were to be extended automatically for additional ten-year periods, unless amended, altered or terminated, on October 1, 1960 or at the end of any succeeding 10-year period, by a majority of the then owners of the lots subject to the

restrictions. All the lots conveyed by Varney contained these restrictions.

The restriction most material to these proceedings reads as follows:

"Each lot laid out in the above mentioned plan shall be used for residential purposes only, and no portion of the land and buildings placed thereon shall be used in the exercise of any trade, business or profession whatsoever, except by written approval of the grantor, his heirs, administrators or assigns."

For about 6 or 8 years prior to August 1962, defendant Thelma Fletcher operated a four-chair beauty parlor on Canal Street in Laconia. She closed this establishment in August 1962 and two of these chairs were set up in the Fletcher home in Collins' Heights. While operating in her residence, Thelma took in a low of $30 and a high of $100 per week. She testified that she never had over six customers in the shop at one time. Plaintiff Varney testified that when he found out that Thelma was operating a beauty parlor in her home he "not long afterwards" instructed his attorney to "put an injunction on it."

The Trial Court found on all the evidence, "that the defendants are violating the restrictions contained in the deed to their premises by operating a beauty salon and the requested injunctive relief would be equitable in view of all the circumstances."

"The law is well settled in this jurisdiction that building [or use] restrictions inserted in deeds can create enforceable equitable servitudes . . . If an original owner has adopted a general scheme for development or subdivision of a certain tract or parcel of land and has inserted in his deeds of lots therefrom uniform restrictions intended by him and by the purchasers to be imposed on each lot for the benefit of all other lots included in the general plan, reciprocal servitudes are thereby created on all the lots in the development . . . The existence of such an intent can be ascertained from the language of the instruments, the conduct of the parties, and the surrounding circumstances." *Bouley* v. *Nashua,* 106 N. H. 74, 77-78; *Sun Valley &c. Co.* v. *Watts,* 98 N. H. 428, 431; *Nashua Hospital* v. *Gage,* 85 N. H. 335, 339-340.

There was evidence that the plaintiff, whose principal business is real estate development, purchased this farm in 1950 and immediately started to develop it as Collins' Heights. About 100 lots were laid out on a series of plans recorded in the Belknap county registry of deeds and all but the 15 or 18 lots still

owned by Varney have been conveyed with the same restrictions found in defendants' deed. By their terms, these restrictions show that Varney intended that no building or structure "other than a single family dwelling" with "at least eight hundred square feet of floor space on its first floor" and a "private garage" were to be erected in the Collins' Heights Development. These lots were to be used "for residential purposes only, and no portion of the land and buildings placed thereon" was to be used "in the exercise of any trade, business or profession whatsoever," except by Varney's written approval. The grantees had "the right to restrain through Court proceedings any infraction or threatened infraction of any of the above restrictions." Varney testified that the restrictions were "for the benefit of the whole property," that on which he lives as well as the rest of it.

Plaintiff also testified that he has never given "any variance of any kind on any of the Collins' Heights property" except for permission granted to a doctor residing therein to see a patient in her home "if it was an emergency." He testified that there has never been any change or agreement for a change in the restrictions. When asked for a variance by Thelma Fletcher, "I told her that I could not" grant her one.

On this evidence the Trial Court could properly find "from the language of the instruments, the conduct of the parties, and the surrounding circumstances," the adoption by Varney of a general scheme for the development of this parcel of land and an intent that uniform restrictions be imposed on each lot conveyed for the benefit of all other lots in the general plan including plaintiff's remaining land. *Bouley* v. *Nashua*, 106 N. H. 74, 76-77. This created in the benefited land an equitable property interest in the burdened lots similar to an easement. *Nashua Hospital* v. *Gage*, 85 N. H. 335, 339; II American Law of Property, *s.* 9.24; 5 Powell, Real Property, *s.* 671, *p.* 145. Any interference with this property interest by a violation of the imposed restriction can be enjoined. *Hatch* v. *Hillsgrove*, 83 N. H. 91, 94; 3 Tiffany, Real Property, *s.* 861, *p.* 489; 20 Am. Jur. 2d, Covenants, Conditions, and Restrictions, *s.* 313, *p.* 879; Restatement, Property, *s.* 528, *comment* e; 43 C.J.S., Injunctions, *s.* 87 (c) *p.* 585; II American Law of Property, *s.* 9.24, *p.* 401.

The granting of an injunction, however, is a matter within the sound discretion of the Court exercised upon a consideration of all the circumstances of each case and controlled by established

principles of equity. *Johnson* v. *Shaw*, 101 N. H. 182, 189; 4 Pomeroy, Equity Jurisprudence (5th *ed.*) s. 1404, *p.* 1040. It is contended by the defendants that similar violations by the plaintiff and his failure to enforce this restriction against other grantees in the same development constitute equitable defenses against the granting of an injunction against them. Defendants further contend that the Trial Court's finding and ruling that the requested "injunctive relief would be equitable in view of all the circumstances" are not warranted by the evidence.

When the plaintiff purchased this farm, now developed into Collins' Heights, it contained a large colonial type house with an apartment on the first floor and three apartments on the second floor as well as a large barn with no restriction on their use. Whether Varney intended to bind himself to hold or use the retained house and barn subject to the same restrictions he imposed on the lots which he conveyed as part of this development is a question of intention to be ascertained from all the evidence. *Nashua Hospital* v. *Gage*, 85 N. H. 335, 341; *Gnau* v. *Kinlein*, 217 Md. 43.

Such a house and barn are not permitted by the restrictions imposed on the lots conveyed by Varney. The area on which these buildings are situated is not shown as numbered lots, as are the restricted lots on plans of Collins' Heights Section I dated March 1952 and Section II revised November 1954 and traced in February 1964 by L. K. Perley. There was no evidence that Varney agreed to tear down this four-apartment house and barn or to refrain from putting them to the uses for which such buildings are customarily utilized. Plaintiff has continued since 1950 to use this house with multiple apartments and has rented the barn for storage of different articles and equipment.

On the evidence the Trial Court properly denied defendants' request No. 12 which sought a finding and ruling that "the complainant's homestead and barn is subject to the uniform restrictions in the so-called Collins' Height Development." The Court could also make the finding implied in the decree granting the injunction that the activities carried on by Varney on those premises did not bar him from seeking relief against the defendants. *Nashua Hospital* v. *Gage*, 85 N. H. 335, 341; *Bouley* v. *Nashua*, 106 N. H. 74; *Price* v. *Anderson*, 358 Pa. 209, 215; *McCandless* v. *Burns*, 377 Pa. 18.

The Fletchers also argue that Varney knew certain other grantees of restricted lots in Collins' Heights were engaging in

business activity within the development and that his acquiescence thereto bars him from obtaining an injunction against the defendants. Whether there has been such acquiescence as to defeat the enforcement of a restrictive convenant depends upon the circumstances of each case and the character and materiality of the permitted activity. II American Law of Property, *s*. 9.38.

There is evidence that certain contractors or builders have their residence in Collins' Heights. Most of them have bought other lots in the development and have built houses to sell. Their names and addresses in Collins' Heights have appeared in the telephone book and, in some cases, the city directory with the designation "Contractor" or "Custom Builder." Some of them have an office in their home from where they sent out statements and where customers visited them. Some maintain a workshop in the cellar or garage of their residence where they prefabricated certain articles for customers and stored some supplies used in their trade. There was testimony concerning certain activities by an electrical contractor who worked from his truck which he kept at home and of actions of an encyclopedia salesman no longer in the development.

We cannot say as a matter of law that such limited activities by a limited number of residents in a development in the process of being realized in which 85 restricted lots have been conveyed and about 40 houses built would constitute acquiescence or other conduct on the part of Varney which would bar him from obtaining injunctive relief against the Fletchers whose activities could be found to be violative of the restrictions imposed in their deed. *Henricks* v. *Bowles*, 20 Ill. App. 2d 148; *Mangini* v. *Oak Park Trust and Savings Bank*, 43 Ill. App. 2d 318; *Lauski* v. *Montealegre*, 361 Mich. 44. See *Laux* v. *Phillips*, 37 Del. Ch. 435; 20 Am. Jur. 2d, Covenants, Conditions, etc., *ss*. 273-275.

The defendants contend that Varney's refusal to grant permission for the operation of the Fletcher beauty salon was unreasonable. The evidence demonstrated a plan by Varney to create a development of at least 100 lots with a strictly residential character. The carrying out of this scheme resulted in the creation of a network of cross easements on the conveyed lots imposing and conferring on each lot reciprocal and mutual burdens and benefits. *Bouley* v. *Nashua*, 106 N. H. 74, 77; *Kajowski* v. *Null*, 405 Pa. 589. It could be found that the release of one of these lots from the burden of the restriction against the exercise of trade or business could result in a subversion of the planned

residential character of the entire development. We cannot hold that under all the circumstances Varney's refusal of permission to the Fletchers had to be found unreasonable as a matter of law. Similarly we cannot find contrary to law the Trial Court's finding and ruling that the requested "injunctive relief would be equitable in view of all the circumstances." *Johnson* v. *Shaw*, 101 N. H. 182, 189. *Barber* v. *Somers*, 102 N. H. 38, 43; *cf.* *Dunfey Realty Co.* v. *Enwright*, 101 N. H. 195, 200.

*Exceptions overruled.*

BLANDIN, J., did not sit; the others concurred.