Carroll,
No. 6073.

EDGAR L. FROST & a.

*v.*

LLOYD V. POLHAMUS & a.

December 30, 1970.

*Nighswander, Lord, Martin & KillKelley* (*Mr. David J. Kill-Kelley orally*), for the plaintiffs.

*John H. Ramsey* and *Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the defendants.

GRIMES, J. The issues in this case are: ( 1 ) whether the evidence supports the finding of the Judicial Referee ( *Blandin, Jr.* ) that plaintiffs' claim to certain rights in a shorefront lot owned by defendants was not barred by laches, and ( 2 ) whether it was error to balance the equities between the parties and not require a building erected in violation of a restriction to be removed. The Trial Court ( *Keller*, J. ) entered a decree in accordance with the judicial referee's report and transferred all questions of law. We uphold the judicial referee on both issues.

In the trial it was established that plaintiffs are the owners of seventeen acres of back land in Moultonboro near Lake Winnipesaukee, the deed to which conveyed the following rights which had originally been created by deed of one Lord in 1949: "Together with the right to travel over the roadway as the same is now being built by the grantor leading to the beach reserved by the grantor for bathing purposes, and also the right to use in common with others the reserved beach for bathing purposes only, said reserved beach is bounded on the north by Lot No. 10 and on the south by Lot No. 11, on the west by said roadway and on the east by Lake Winnipesaukee. No boats shall be beached on said reserved bathing beach and no structures shall be erected thereon."

Lord, in 1950 conveyed the reserved beach between Lots 10 and 11, now called 10a, to Williams, predecessor in title to defendants, without mention of the restrictions and rights previ-

ously conveyed. In 1953, plaintiffs learned of the conveyance of Lot 10a and the claim to unencumbered title by Williams. Mr. Frost contacted Lord in July 1954 who said he forgot the restrictions and promised plaintiffs another lot, a promise which he never fulfilled. He has since disappeared and cannot be found. Because of an accident, Mr. Frost was confined to a hospital and was in a cast for six months but he contacted a lawyer, now deceased, who told him he had "nothing to worry about." In 1959 Mr. Frost went to see Williams who informed him he could use the lot only as Williams' guest. He claims, however, he asserted his right to swim and did swim. The lawyer on being informed of this again advised plaintiff not to worry. At this time there were no structures on the property.

Defendants purchased the lot from the grantees of Williams in December 1959 and built their camp and installed a wharf in 1960.

In 1965 plaintiffs first learned that there was a building on the lot. The same lawyer gave the same assurances. Plaintiffs requested immediate action by him to secure their rights but received no response. An attempt by plaintiffs in 1966 to reach some agreement with defendants was fruitless and in 1967 they secured new counsel who filed this bill in equity on December 4, 1967.

Although no specific reference was made in the deeds in defendants' chain of title to the restrictions, reference was made to the recorded plan which showed the lot marked "reserved," and all the conveyances in defendants' chain of title as well as the deed to them made the conveyance subject to "all rights of way that may have heretofore been granted." A title search would have revealed the plaintiffs' rights and the restrictions on the defendants' lot. Defendants were charged with notice of plaintiffs' rights. *Sanborn, McDuffee Co.* v. *Keefe*, 88 N.H. 236, 187 A. 97 ( 1936 ); *Moore* v. *Center*, 124 Vt. 277, 204 A.2d 164 ( 1964 ). All during this period, plaintiffs were resident in Massachusetts and came to their property only occasionally. The judicial referee found that the plaintiffs' claims were not barred by laches as claimed by the defendants and decreed plaintiffs a right of way to the shore and use of the beach. We cannot say that a contrary finding was required. *Cote* v. *Cote*, 94 N.H. 372, 54 A.2d 360 ( 1947 ); *Valhouli* v. *Coulouras*, 101 N.H. 320, 142 A.2d 711 ( 1958 ). Clearly the construction of the camp and the wharf were in violation of the plaintiffs'

rights. The judicial referee, however, under the doctrine set forth in *Johnson* v. *Shaw*, 101 N.H. 182, 188, 137 A.2d 399, 403 ( 1957 ), and *Margeson* v. *Ladd*, 108 N.H. 233, 231 A.2d 638 ( 1967 ), considered the damage to the defendants if they should be ordered to remove improvements, and balancing the equities ordered the removal of the wharf but permitted the camp to remain subject to the restriction against enlarging it or erecting any other structures on the lot. Under all the cir-cumstances, we hold this action was justified by the evidence.

*Decree affirmed.*

All concurred.