Rockingham,
No. 6100.

THOMAS F. CARROLL & a.

*v.*

GERALD J. SCHECHTER & a.

June 30, 1972.

*Boynton, Waldron & Dill* and *Nicholas R. Aeschliman* (*Mr. Aeschliman* orally) for the plaintiffs.

*Shaw & Eldredge* (*Mr. Carleton Eldredge* orally) for defendants Gerald J. Schechter and Joel R. Schechter.

*Perkins, Holland, Donovan & Beckett* (*Mr. William H. M. Beckett* orally) for defendant Newburyport Five Cents Savings Bank.

*John C. Driscoll,* for defendant Robert W. Pirtle, filed no brief.

LAMPRON, J. The issues presented on this appeal are (1)

whether "protective covenants" appearing on a recorded plan of numbered lots apply to a large unnumbered parcel of land shown thereon retained by the grantor-developer and subsequently acquired by the defendants Schechters; (2) whether they prevent the use of the retained land for the parking of cars; (3) whether the trial court properly refused to order the removal of a 4-unit building brought on the retained land by the Schechters.

Initiated as a petition for injunctive relief, the matter was submitted to a Master (*Leonard C. Hardwick*, Esquire) on an agreed statement of facts mainly to determine the effect of the "protective covenants". The master found and ruled that they were binding on the retained land but did not prevent its use for parking and refused to order the removal of the building brought thereon. The master's recommendations were approved by *Leahy*, C. J. and a decree was issued in accordance therewith. Plaintiffs' exceptions thereto were reserved and transferred by *Perkins*, J.

Most plaintiffs are owners of single-family dwellings located in Tower Park in Hampton. They are situated on numbered lots depicted on a "Plan of Tower Park Hampton, N. H.", prepared in 1956, approved by the Hampton Planning Board on June 22, 1958, and recorded in Rockingham County Registry of Deeds on June 30, 1958. It divides the tract thereon into 24 numbered lots and an unnumbered lot designated "Tower Realty Inc.". Each of the 24 lots are approximately 100 x 100 feet and the unnumbered lot has an area of 34,924 square feet. Protective covenants appearing in one corner of the plan regulate the type, height, and location of structures and refers to land reserved for a public way. They provide that not more than one single-family residence be placed on each lot.

This tract of land was acquired by Tower Realty in 1955 at which time a large dwelling with outbuildings and a barn were located on what later became the unnumbered lot. Tower remodeled the residence into five separate dwelling units. This was done close in time to the preparation and creation of the Tower Park plan and subdivision in 1956. For several years thereafter Tower conveyed the numbered lots by deeds which contained the covenants expressly or incorporated them by reference to the plan.

Lloyd C. Ring owned property on the opposite side of Elaine Street, the easterly boundry of the Tower Park land. In a conveyance to Tower of a strip of his land along Elaine Street for a public way, Ring covenanted to include the protective covenants on the Tower Plan in any conveyance of his lots bordering on the easterly side of Elaine Street and one of the protective covenants on the Tower plan so stated. Three of the plaintiffs owned lots created from the Ring property.

On March 1, 1967, Tower by two separate deeds conveyed the large unnumbered lot, divided as two lots, to the defendants Schechters. They razed the barn and outbuildings thereon and secured a permit from the town to construct an 18-unit apartment house. They had commenced excavations for the foundation when this petition was instituted. It allegedly brought about the withdrawal of bank construction financing and the Schechters transferred their projected apartment building to a neighboring lot. In order to do so they moved a 4-unit building from the neighboring lot onto the unnumbered lot. The other defendant, Newburyport Five Cents Savings Bank holder of a mortgage of the 4-unit building became a party to the action.

The master found and ruled "that if the covenants written on the plan are applicable to the other numbered lots in the subdivision, they are also applicable to the large unnumbered lot. The lot was specifically delineated on the plan that was approved by the Hampton Planning Board. There were no specific exclusions of the lot in the restrictions. At the time the plan was made, there was common ownership of the large unnumbered lot and other lots." The master further found and ruled that these covenants were binding on successors in title whether or not they were incorporated in the deed or referred to therein, and that the recorded plan provides such successors in title with notice of the restrictions.

If an original owner has adopted a general scheme for developing a tract of land; has had approved and filed a plan thereof on which are found covenants which are inserted or referred to in his deeds of lots therefrom and are intended by him and his purchasers to be imposed on each lot for

the benefit of the other lots on the plan; reciprocal restrictions are thereby created on all the lots. *Bouley* v. *Nashua,* 106 N.H. 74, 77, 78, 205 A.2d 34, 36, 37 (1964). However, the mere fact that a grantor imposes restrictions on part of a tract of land which he is selling does not necessarily lead to the conclusion that he intended thereby to have the restrictions apply to his remaining land. *Fournier* v. *Kattar,* 108 N.H. 424, 428, 238 A.2d 12, 15 (1968); *Witt* v. *Steinwehr Development Corp.,* 400 Pa. 609, 162 A.2d 191 (1960); 20 Am. Jur. 2d Covenants, Conditions, and Restrictions *s.* 168 (1965); *see Sun Valley & c. Co.* v. *Watts,* 98 N.H. 428, 102 A.2d 504 (1954).

Whether or not it was intended that the covenants were to apply to the retained unnumbered lot is to be ascertained from the plan itself, the conduct of the parties, and the surrounding circumstances. *Varney* v. *Fletcher,* 106 N.H. 464, 466, 213 A.2d 905, 907 (1965). Defendants argue that the existence of a large colonial house on that lot which was made into 5 small apartments at about the time the plan was made militates against the grantor's intent to limit this lot by a protective covenant that not more than a single-family residence was to be placed on each lot. However, the conveyance from Ring to Tower which was to subject Ring's adjoining lots to the single-residence covenants on the Tower Plan could be found to evidence an intent by the grantor-developer that a broad restrictive plan of single-residence dwellings was to apply to the whole area including his retained land.

Defendants further argue that this court's decision in *Varney* upholding the trial court's denial of a request that the land retained by the grantor in that case was subject to the restrictions placed on the other lots on the plan, requires a similar result in this case. It has been said that although cases of this type seem to "abound in fine and subtle distictions" and appear to be in conflict, "they are usually reconcilable when the facts in each case are fully understood." 20 Am. Jur. 2d Covenants, Conditions, and Restrictions *s.* 165 (1965). We cannot say as a matter of law that there was error in the findings and rulings of the master, approved by the trial court, that the protective covenants in this case were

intended to apply to the unnumbered retained lot and were binding on the Schechters. *Sun Valley & c. Co.* v. *Watts,* 98 N.H. 428, 102 A.2d 504 (1954); *Fournier* v. *Kattar,* 108 N.H. 424, 238 A.2d 12 (1968).

The defendants caused a portion of the unnumbered lot to be paved and laid out for the parking of about 30 cars. Plaintiffs claim that the spaces are used as a parking lot for the occupants of an apartment house across Elaine Street as well as for occupants of the apartments located on the unnumbered lot. They claim this use is inconsistent with the single-residence use intended by the restrictive covenants. The master ruled that the restrictions are applicable to buildings and do not otherwise apply to use and do not prevent the use for parking as long as it does not involve the erection of a structure.

Here again cases can be found which reach opposite results under varying circumstances. *See* Annot., 80 A.L.R.2d 1258 (1961). It was held in *Shaddock* v. *Walters,* 55 N.Y.S.2d 635 (Sup. Ct. 1945) that such a use is permissible especially if it is not an adjunct to a business and does not involve the erection of a structure. *See Schulman* v. *Serrill,* 432 Pa. 206, 246 A.2d 643 (1968); 20 Am. Jur. 2d Covenants, Conditions, and Restrictions *s.* 220 (1965). Under the circumstances of this case, we cannot say as a matter of law that the master's ruling adopted by the trial court permitting the use for parking was erroneous.

The 4-unit building which the plaintiffs sought to have ordered removed from the unnumbered lot was placed thereon to make room for the construction on a neighboring lot of the apartment building intended for the unnumbered lot. The defendants Schechters had obtained a permit from the town for its construction on the unnumbered lot and allege that they had contracted and obtained financing for its construction. They had razed the barn and outbuildings thereon and had started excavating when the petition was initiated. Defendants further claimed that service of the petition caused a withdrawal of construction funds by the bank which forced them to move the 4-unit building to the unnumbered lot so as to continue their building plans elsewhere and meet building contract obligations already incurred.

They claim that the plaintiffs were aware of their plan to build in January 1967 and that they took no action until May when this petition was started.

The other party defendant Newburyport Five Cents Savings Bank, alleged that without notice of these proceedings and in good faith it had taken mortgages on portions of the unnumbered lot and on the 4-unit building moved thereto. It further alleged that its removal would result in a substantial deterioration of its security interest therein.

It has long been settled in this jurisdiction that hardship upon defendants may be a sufficient ground for withholding injunctive relief, which is a peculiar and extraordinary remedy of equity. We cannot say as a matter of law that it could not be found and ruled that it would be inequitable under all the circumstances to order the removal of the 4-unit building in question. *Johnson* v. *Shaw,* 101 N.H. 182, 137 A.2d 399 (1957); *Frost* v. *Polhamus,* 110 N.H. 491, 272 A.2d 596 (1970).

*Exceptions overruled.*

GRIFFITH, J., did not sit; others concurred.