Hillsborough
No. 79-221

JOHN E. ARNOLD & a.

v.

GEORGE B. CHANDLER & a.

March 11, 1981

*Brown and Nixon,* of Manchester (*David W. Hess* on the brief and orally), for the plaintiffs.

*Stark & Peltonen,* of Manchester (*John E. Peltonen* on the brief and orally), for the defendants E. Leo Kanteres and MacArthur, Inc.

BROCK, J.   The plaintiffs in this case appeal from the denial of their petition for equitable relief and an injunction to enforce certain land use restrictions which they claim apply to the residential subdivision in which they and the defendant Chandlers reside. Specifically, the Arnolds sought to enjoin their neighbors, the Chandlers, from conveying a fifty-foot right-of-way across their lot to the other defendants, who would use the right-of-way for an access road to five residential building lots which they wish to develop adjacent to, but outside, the subdivision. Trial, with a view, was held before a Master (*Earl J. Dearborn,* Esq.) and resulted in a recommendation that injunctive relief be denied. *Randall,* J., approved the master's recommendation and the plaintiffs appealed to this court. We affirm.

The Chandlers' property is located in a housing development known as the "Jamestown" subdivision in Bedford. The plaintiffs Arnold, Roy and Dieter own adjacent lots in the subdivision. According to the record, the area is a secluded, residential neighborhood, and the road on which the parties reside comes to a dead-end.

The Jamestown subdivision was originally owned and developed by Armand and Shirley Rivard. In 1970, the Rivards recorded a declaration of restrictions purporting to place restrictions on the use of land in the subdivision. Although the Rivards were the record owners of the land, the restrictions were recorded under the name of a corporation that they owned, Ardon Corporation. At the time when the Rivards intended to develop a lot, they would convey it to the corporation, which would build the home and sell it to the home buyer. Five lots were developed in this manner. Because

the declaration of restrictions was recorded before the corporation took title to any of the lots in the subdivision, the conveyancing procedures employed by the Rivards were, at best, questionable. Further complicating things, the Rivards also sold two lots directly to individual buyers before the restrictions had been recorded. In addition, even after the declaration of restrictions had been recorded, the Rivards sold another five lots directly to individuals desiring to build their own homes, without conveying them first to Ardon Corporation. Thus, as to at least twelve of the thirty-six lots in the Jamestown subdivision, serious questions arise as to the applicability of the declaration of restrictions recorded in the name of Ardon Corporation.

On June 5, 1973, the Rivards elected to employ a more practical procedure and recorded, under their own names, a second declaration of restrictions. This declaration specifically applied to all of their lots in the Jamestown subdivision which remained unsold on that date. Five months thereafter, the Rivards sold the lot that now belongs to the defendant Chandlers to Harold and Frances Mokler. The deed from the Rivards to the Moklers, however, made no reference to either the restrictions or any instrument that referred to them. This same lot was conveyed a number of times before the Chandlers acquired title to it in 1976, but none of the intervening deeds ever referred to the declaration of restrictions. In addition, the master found that the Chandlers never had *actual* notice of the restrictions.

The deeds by which the plaintiffs Roy, Arnold and Dieter acquired title to their respective lots, however, all refer to the declaration of restrictions recorded by the Rivards on June 5, 1973.

In 1978, the Chandlers decided that they would like to build a tennis court on their lot. In order to build the tennis court, it was necessary that they apply for a variance from the provisions of the Bedford zoning ordinance because their lot was undersized and their plan did not comply with side-lot requirements. The Chandlers applied for a variance but the abutting landowners, the plaintiffs Arnold, objected and the requested variance was denied.

Shortly thereafter, on December 20, 1978, the Chandlers entered into an agreement with the defendants, Leo Kanteres and MacArthur, Inc., who own approximately 190 acres of land adjoining the Chandlers and the Jamestown subdivision, to sell a fifty-foot right-of-way across their property in return for sufficient land to enable the Chandlers to build a tennis court without having to seek a variance. The Kanteres-MacArthur, Inc., land is not otherwise land-

locked, but the right-of-way would provide a much more economical means of access to part of their acreage than any other alternative.

Upon learning of this agreement, the plaintiffs brought this action, asserting that both of the recorded declarations of restrictions bar the proposed conveyance of the right-of-way.

■ Because the first declaration of restrictions was recorded under the name of Ardon Corporation, which never had title to the Chandlers' land, we conclude that it is not relevant to the issues to be decided in this case.

■ The declaration of restrictions recorded in the name of the Rivards in June 1973 is another matter. It was recorded at a time when the Rivards held title to the lot in question and the grantor's index clearly indicates that it is a declaration of restrictions applicable to the Jamestown subdivision. A title search would have revealed not only the existence of the restrictions, but also their application to the lot in question. *See Frost v. Polhamus,* 110 N.H. 491, 493, 272 A.2d 596, 597 (1970).

Reference to the declaration shows that its purpose "is to insure the use of the Jamestown subdivision . . . for attractive private residential purposes only . . . ." It applies to all of the lots in Jamestown not sold by the Rivards prior to June 5, 1973. Specific provisions prohibit the subdivision of existing lots but allow for adjacent lot owners to modify their common boundaries so long as the total area of the individual lots remains the same. Numerous other restrictions, not relevant to the case before us, are set forth in the declaration. In addition, the declaration purports to restrict the uses to which the lots may be put even if the deeds conveying them do not specifically refer to the declaration.

■■ The plaintiffs argue that the restrictions are enforceable both as real covenants and as equitable servitudes. "Broadly speaking, a 'covenant' is an *agreement between two* or more persons to do or permit the doing of a particular act. Strictly speaking, it is an *agreement by deed* to do or not to do some particular act." 7 G. THOMPSON ON REAL PROPERTY § 3150 (1962 Replacement) (emphasis added); *see Hanslin v. Keith,* 120 N.H. 361, 363, 415 A.2d 329, 330 (1980). Because no such agreement appears in any of the *deeds* conveying the land now owned by the defendants, we hold that the restrictions are not enforceable as restrictive or "real covenants" running with the land. *See Traficante v. Pope,* 115 N.H. 356, 358–

59, 341 A.2d 782, 784 (1975). An equitable servitude, however, may arise when there is a "general scheme of development and binds an owner who acquired the land with notice of a restriction on it." *Hanslin v. Keith, supra* at 363, 415 A.2d at 330. *See Traficante v. Pope, supra* at 359, 341 A.2d at 784. Thus, even in the absence of an agreement by deed, the restrictions may still be enforced as an equitable servitude against the purchaser or subsequent purchasers if they "acquired the land with notice of the restrictions on it. [Citations omitted.]" *Traficante v. Pope, supra* at 359, 341 A.2d at 784.

Here, the Rivards recorded the "Jamestown" restrictions and later conveyed the lot to the Chandlers' predecessors in title, the Moklers. The deed made no reference to the restrictions, nor does the evidence presented establish that the Moklers and Rivards made a mutual promise concerning the restrictions. Indeed, the evidence before the trial judge did not compel a finding that the Moklers had actual notice of the restrictions, and the master made no such finding. However, because the restrictions related to a general scheme of development and we are dealing with a "subsequent taker who acquired the land with [constructive] notice of the restrictions on it . . ." an equitable servitude is created. *See Traficante v. Pope, supra* at 359, 341 A.2d at 784.

■ "Enforcement of such a right in equity is clearly permissible." *Johnson v. Shaw*, 101 N.H. 182, 187, 137 A.2d 399, 402 (1957). The decision to enforce an equitable servitude by granting injunctive relief, however, "is a matter within the sound discretion of the [trial court] exercised upon a consideration of all the circumstances of each case and controlled by established principles of equity." *Varney v. Fletcher*, 106 N.H. 464, 467–68, 213 A.2d 905, 908 (1965); *see Johnson v. Shaw, supra* at 188–89, 137 A.2d at 403–04 (1957). "Sound discretion means 'a discretion in consonance with well established principles of law, one that is neither arbitrary, vague nor fanciful.' " *Hanslin v. Keith, supra* at 364, 415 A.2d at 331. We will uphold the master's decision unless it is apparent from the record that he abused his discretion.

■■ In this case, after a view and hearing all the evidence, the master found that the proposed roadway, if limited to serve a maximum of five residential lots, would not "interfere with the carrying out of the general plan of the area and the purposes of the restrictions." He also found that an earlier plan of the development

showed a road would eventually be built in the same vicinity as the one now proposed. While these findings are sufficient to support the result reached by the master, there remains a flaw in his decision. The master ruled that the Chandlers' lot was not subject to an equitable servitude, and we have held otherwise herein. The determinative question in cases where a party seeks to enforce an equitable servitude is whether the injunctive relief requested "would be equitable in view of all the circumstances of the particular case." *See Johnson v. Shaw*, 101 N.H. 182, 184, 137 A.2d 399, 403–04 (1957), and the trial court did not expressly make such a finding here. It did, however, order that the proposed access road be limited to serve a maximum of five residential lots, concluding that a limited access road would not "interfere with the carrying out of the general plan of the area and the purposes of the restrictions." We regard this finding and order as being the equivalent of a determination by the trial court that its order was "equitable in view of all the circumstances" of the case. Based upon our review of the record, we can find no fault in such a determination. Accordingly, we affirm.

*Affirmed.*

KING, J., did not sit; the others concurred.