Sullivan
No. 81-283

ALBERT J. GAUTHIER *& a.*

v.

PAUL ROBINSON *& a.*

April 7, 1982

366

*Elliott, Jasper & Bennett*, of Newport (*Louie C. Elliott, Jr.*, on the brief and orally), for the plaintiffs.

*John C. Fairbanks Law Offices*, of Newport (*Gordon B. Flint, Jr.*, on the brief and orally), for the defendants.

Bois, J.   The Superior Court (*Johnson*, J.) approved the recommendation of a Master (*Charles T. Gallagher*, Esq.) and enjoined the defendants from operating a beauty shop or a similar enterprise and from erecting or maintaining any outdoor advertising sign on the premises owned by them. The defendants appeal, and we affirm.

In 1978, the defendants, Marcia and Paul Robinson, sought to acquire a home in a residential development in Newport, New

Hampshire. All the lots in the development were subject to identical covenants which restricted the use of the lots to single-family residences and prohibited commercial uses and the display of outdoor advertising signs. The lot owners in the development had deeds which expressly permitted them to enforce the covenants in equity. Subsequent to the execution of the deeds, the town of Newport passed a zoning ordinance permitting "home occupations."

When the Robinsons, who had notice of the restrictive covenants mentioned above, were contemplating purchasing the Newport property, it was financially important to them that Mrs. Robinson be able to operate a beauty shop business at their home. They were successful in obtaining releases from the covenant restrictions from about half of the lot owners. They purchased the house, notwithstanding the fact that releases were not executed by all of the lot owners.

Shortly thereafter, the defendant Marcia Robinson began operation of a one-room, one-chair beauty shop in the basement of the home. The building was properly maintained, and the grounds were well groomed. The only outward manifestation of the beauty parlor operation was the existence of two outdoor signs. One sign stood in front of the house, while the other sign was located in the driveway and pointed to the salon entranceway at the rear of the building. The shop was not listed in the telephone book, and was not advertised in any other way. Customers generally arrived and departed one at a time for half-hour appointments during business hours. The shop was open three-and-one-half days per week.

In addition to Mrs. Robinson's beauty shop operation, the defendant husband, Paul Robinson, operated a paving business from the home. Several trucks and other pieces of heavy equipment were parked on the property.

The plaintiffs, Albert and Ruth Gauthier, who were the original developers of the Newport subdivision and still owned lots in the tract, brought a petition to enjoin the beauty shop and construction businesses on the defendants' premises. Although the Gauthiers had signed the release petition circulated by the defendants, their signatures were not to take effect unless all of the lot owners agreed to release the restrictions. Two other lot owners, William and Audrey Aiken, who had not joined in the release, were subsequently added as party plaintiffs.

Following a hearing, the master found that an injunction prohibiting the paving business was unnecessary, because Paul Robinson had admitted that the plaintiffs were justified in objecting to this sort of activity and had moved his base of operations to another

location. The master further held that "[c]learly the operation of the beauty shop, with or without the sign, is a violation of the restrictions and covenants which the plaintiffs have a right to enforce."

The defendants argue that the order is contrary to the law, against the weight of the evidence, and an abuse of the court's discretion. They admit in their brief that "the clear view of the law is such that a valid restriction upon the use of property is not terminated, superseded or nullified by the subsequent enactment of a less restrictive zoning ordinance," like the ordinance enacted in Newport. Nevertheless, they further argue that covenants and restrictions placed in deeds prior to enactment of a zoning ordinance should not be interpreted more restrictively than the ordinance itself, where, or as in the instant case, the violation is allegedly "de minimis."

■■ The law in this jurisdiction is unambiguous. If an owner of a tract of land has adopted a general scheme for the development of his lots, and has inserted in his deeds uniform restrictions intended for the benefit of all the lots, equitable reciprocal servitudes are thereby created on the lots. *Varney v. Fletcher*, 106 N.H. 464, 466, 213 A.2d 905, 907 (1965). An intent that uniform restrictions be imposed on each lot, for the benefit of all the other lots in the general plan, creates in the benefited land an equitable property interest in the nature of an easement. *Id.* at 467, 213 A.2d at 907; *see Arnold v. Chandler*, 121 N.H. 130, 134, 428 A.2d 1235, 1237 (1981). This interest is binding upon purchasers, such as the defendants, who had notice of the restrictions when they acquired the land. *See id.*, 428 A.2d at 1237.

■ The existence of an equitable servitude can be ascertained from the development plan, the instruments, the conduct of the parties, and the surrounding circumstances. *Carroll v. Schechter*, 112 N.H. 216, 219, 293 A.2d 324, 326 (1972); *Bouley v. Nashua*, 106 N.H. 74, 78, 205 A.2d 34, 37 (1964). We have held that a holder of a valid equitable servitude may obtain an injunction against a violation of the imposed restriction. *Varney v. Fletcher*, 106 N.H. at 467, 213 A.2d at 908; *cf. Nashua Garden Corp. v. Gordon*, 118 N.H. 379, 382, 386 A.2d 1278, 1280 (1978). We have also recognized that "[t]he granting of an injunction . . . is a matter within the sound discretion of the Court exercised upon a consideration of all the circumstances of each case and controlled by established principles of equity." *Varney v. Fletcher*, 106 N.H. at 467–68, 213 A.2d at 908. *See generally Assoc. Home Util's, Inc. v. Town of Bedford*, 120 N.H. 812, 815–16, 424 A.2d 186, 189 (1980); *Timberlane Regional School*

*Dist. v. Timberlane Regional Educ. Ass'n,* 114 N.H. 245, 250, 317 A.2d 555, 558 (1974).

■ Our review of the record in these matters is limited in that we will not substitute our judgment for the master's judgment, and we will uphold his findings and rulings unless they are unsupported by the evidence or are erroneous as a matter of law. *Suojanen v. Tardif,* 121 N.H. 1036, 1038, 437 A.2d 310, 311 (1981).

■ We cannot conclude, on the facts before us, that the master's findings and his ruling that "[i]t is equitable to cut off the nose of the camel before the beast intrudes further into the tent" are erroneous as a matter of law. We hold that the evidence supported the injunctive relief granted by the court, and that such relief was fair and equitable.

*Affirmed.*

KING, C.J., did not sit; the others concurred.