Rockingham
No. 88-310

PATRICK F. CHASSE, SR.

v.

TOWN OF CANDIA

December 29, 1989

*Craig & Wenners P.A.*, of Manchester (*Vincent A. Wenners, Jr.*, on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Barton L. Mayer* and *Gilbert Upton* on the brief, and *Mr. Mayer* orally), for the defendant.

BROCK, C.J.   Landowner Patrick F. Chasse, Sr., the plaintiff in this declaratory judgment action, appeals from a decision of the superior court regarding the marketability of a 34-acre tract of land. For reasons that follows, we affirm.

The plaintiff sought to determine whether this acreage, situated in the town of Candia, is saleable in lot sizes of less than the three-acre minimum required by a town zoning ordinance. Trial before a Master (*R. Peter Shapiro*, Esq.) resulted in a recommendation that sale of the nonconforming lots be conditioned upon subdivision approval by the Candia Planning Board. The Superior Court (*Gray, J.*) adopted the master's recommendation, and the plaintiff brought

this appeal, presenting four issues for our review: (1) whether an unrecorded subdivision plat setting forth a general scheme for future development creates equitable servitudes which are enforceable against a town, and operate to override its zoning ordinances; (2) whether the grandfather clause of the Candia Zoning Ordinance exempts the plaintiff's land from lot size restrictions; (3) whether RSA 674:39 authorizes development of the plaintiff's land in accordance with the original subdivision plat; and (4) whether the common law confers upon the plaintiff vested rights to subdivide his acreage in quarter-acre and half-acre lots.

The land in controversy is depicted on a subdivision plan showing ninety-three lots that vary in size from one-quarter to one-half acre. The plat, captioned "Plan of Land of Charles Caron," was prepared by George C. Benjamin in 1956. That year, Charles Caron and his wife acquired all the land shown on the Benjamin plans, which contained approximately forty-four acres and considerable frontage on Route 101-B.

Subsequently, the Carons sold most of the lots fronting on Route 101-B, conveying the lots in eleven separate transactions, and with one exception, in two-lot parcels. Ten dwellings have been constructed on these parcels. The balance of the lots depicted on the Benjamin plans were conveyed to the plaintiff in 1963 by a deed which referred to the Benjamin plan but made no representation concerning recording or location of the plan. To date, title to the entire tract remains in the plaintiff's family, although he conveyed several lots to each of his three sons.

The Chasse family has neither recorded the Benjamin subdivision plan, nor implemented the improvements contemplated thereon. Of the sixty-seven lots originally purchased by the plaintiff, only three have been developed, and there is no network of roads on the site as depicted on the Benjamin plans. The master in this case, who had the benefit of a view, found no evidence of even the rudimentary clearing of proposed roads; he found no clearing of lots, construction of water or waste disposal systems, or staking out of individual lots.

Following the hearing, the master found that the plaintiff's lots are not "grandfathered" under the recording requirements of applicable zoning ordinances, and are not endowed with the nonconforming status which exempts such lots from minimum dimensional requirements. Recalling the lack of roads, water systems, sewer systems, or buildings seen on the view, the master noted that the plaintiff had not made the type of progress or expenditures on his project which would create a vested right to

complete the same. Additionally, the master found nothing homogenous in the character of existing development which would entitle the plaintiff to invoke the doctrine of implied reciprocal servitudes as a basis for subdivision. The master referred to the unfavorable soil conditions and surface waters found at the site, and concluded that the plaintiff's lots may not be sold individually without approval by the planning board.

Seeking to free his lots from size restrictions, the plaintiff argues, first, that there are equitable servitudes attached to his lots which are enforceable against the town and permit development in conformity with the subdivision proposed by the Benjamin plans. We disagree. Although it is true that the Benjamin plat proposed a common scheme for development, there has been no uniform pattern of development which refers unequivocally to the original plan so as to create an implied reciprocal servitude against remaining lots.

Before an equitable servitude will arise by implication, there must be conveyances in conformity with a general plan, so that subsequent takers have constructive notice of an intended restriction. *Arnold v. Chandler*, 121 N.H. 130, 134, 428 A.2d 1235, 1237 (1981); *Traficante v. Pope*, 115 N.H. 356, 359–60, 341 A.2d 782, 784–85 (1975). Thus, where the existence of reciprocal rights is implied, the inference must be drawn from the conduct of the parties and the surrounding circumstances, as well as from the plan itself. *Gauthier v. Robinson*, 122 N.H. 365, 368, 444 A.2d 564, 566 (1982); *Carroll v. Schechter*, 112 N.H. 216, 219, 293 A.2d 324, 326 (1972). Here, development over the past 25 years has been scattered and sporadic, deviating substantially from the neighborhood scheme formulated by the unrecorded Benjamin plan. Because equitable servitudes do not arise simply by reason of an unrecorded plat, the master was correct in finding that none have attached to the plaintiff's lots.

Furthermore, even if there was sufficient evidence of a general plan for reciprocal rights to arise by implication, and fasten upon the title of lots carved out of the original tract, those covenants would not, as a matter of law, be enforceable against the defendant. Our cases point out that equity enforces reciprocal servitudes only against a purchaser or possessor of burdened land. *Gauthier v. Robinson*, 122 N.H. at 368, 444 A.2d at 566; *Arnold v. Chandler*, 121 N.H. at 134, 428 A.2d at 1237. Thus, if the owners of burdened lots can trace their title back to the same original grantor, a prior taker may sue a later taker, and *vice versa*, because the lot of each

is subject to the burden of the same servitude. *Id.* For the same reason, grantees of the original grantor may enforce the servitude as against each other. The plaintiff, however, seeks to impose the burden of a reciprocal servitude upon the Town of Candia, claiming that the town is chargeable with notice of quarter-acre lot restrictions, and must abide by that plan of division. The dispositive flaw in this argument is that the town has no relationship, with either the plaintiff or the subject land, that binds it as a promisor. Accordingly, whether or not equitable servitudes have attached to the plaintiff's land, equity will not enforce them against the defendant, and they do not operate to override the zoning ordinance.

The plaintiff's second argument is that his land is protected under the grandfather clause of the Candia Zoning Ordinance, which exempts existing nonconforming lots from the minimum area requirements set by the ordinance. Section 2.02 of the Candia Zoning Ordinance provides in pertinent part that:

> "the dimensional requirements ... shall not apply to any lot, *as herein defined*, that, at the time of its creation, complied with the minimum dimensional requirements of the zoning ordinance then in effect."

(Emphasis supplied.) Section 3.21 of the ordinance further defines a lot as:

> "a single parcel of land in the same ownership throughout as *shown on* or *described in* an instrument recorded in the Registry of Deeds."

(Emphasis supplied.) Pointing to his deed from the Carons, the plaintiff contends that his lots are "described" in a recorded instrument within the meaning of the ordinance. We disagree.

The deed from Charles and Laura Caron to Patrick E. Chasse, Sr., indicates nothing about the location or perimeter of any lot. It simply lists sixty-seven lots by number, and then directs the reader to the Benjamin plans "for further reference." To be sure, the lots are shown on the Benjamin plan. However, the plat was never recorded, and without it, the plaintiff's deed is unavailing.

█ The deed contains no courses, distances, metes and bounds, or other estimates of area from which dimensions might be ascertained, and hence, no "description" as that term is commonly understood. Consequently, it is impossible to determine which lots, if any, complied with applicable zoning ordinances then in effect, as required for non-conforming status under the grandfather

clause. We therefore hold that the plaintiff's lots have no legal existence under the grandfather clause of the zoning ordinance.

■ The plaintiff next argues that RSA 674:39 provides him with a four-year exemption from the lot size restrictions of the recently enacted zoning ordinances. We note, however, that the exemption provided by RSA 674:39 applies only to a "plat approved by the planning board and properly recorded in the registry of deeds ..." RSA 674:39. Because the plaintiff concedes that the Benjamin plan is neither approved nor recorded, the statute is inapplicable here, and provides him with no relief.

■ The plaintiff's last argument is that, based upon the improvements he has already made to his lots, he has acquired vested rights to continue development without regard to the town's minimum lot size restrictions. This argument is also without merit. The common law doctrine of vested rights entitles a landowner to complete his project when he has made substantial construction or incurred substantial liabilities in good faith reliance upon the absence of regulations prohibiting the project. *Davis v. Town of Barrington*, 127 N.H. 202, 210, 497 A.2d 1232, 1237 (1985); *Piper v. Meredith*, 110 N.H. 291, 299, 266 A.2d 103, 109 (1970). The master in this case, who had the benefit of a view, found no evidence of substantial construction or expenditures in furtherance of the proposed subdivision, and no vested entitlement to proceed with development of substandard lots. On the record before us, we cannot say that the master's decision was unreasonable, and accordingly, we affirm. *See Sanderson v. Town of Greenland*, 122 N.H. 1002, 1006, 453 A.2d 1285, 1288 (1982).

*Affirmed.*

All concurred.