# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0523, <u>William E. Salie, III v. Jeffrey W. Barnes & a.</u>, the court on April 27, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, Jeffrey W. Barnes and nine other lot owners in a certain subdivision (owners), appeal an order of the Superior Court (<u>Schulman</u>, J.) granting summary judgment in favor of the plaintiff, William E. Salie, III. They contend that the trial court erred by: (1) finding that restrictive covenants burdening the lots within the subdivision do not prohibit the construction of a detached garage; (2) finding that no approval for the plaintiff's proposed detached garage was required because no entity existed with the authority to give such approval pursuant to the covenants; and (3) not identifying the plaintiff's proposed garage as a commercial use.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. <u>Shaff v. Leyland</u>, 154 N.H. 495, 497 (2006). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will uphold the grant of summary judgment. <u>Id</u>. We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>. <u>Id</u>.

The proper interpretation of restrictive covenants is a question of law, which we review <u>de</u> <u>novo</u>. <u>See</u> <u>Stowell v. Andrews</u>, 171 N.H. 289, 295 (2018). We base our judgment on this question of law upon the trial court's findings of fact. <u>Id</u>. at 296. When interpreting a deed, we give it the meaning intended by the parties at the time they executed it, taking into account the surrounding circumstances at that time. <u>Id</u>. If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. <u>Id</u>. Cases involving restrictive covenants present such a wide spectrum of differing circumstances that each case must be decided on its own facts. <u>Chase v. Joslin Mgmt. Corp.</u>, 128 N.H. 336, 338 (1986).

We first address whether the trial court erred in concluding that the restrictive covenants do not preclude detached garages. The owners argue

that, because the covenants require all residences to have an attached garage, all other garages are necessarily precluded. However, section 14 of the covenants requires that "[u]nregistered or uninspected automobiles or automobiles being repaired, refinished or restored . . . shall be stored in a garage or other enclosed structure." (Emphasis added.) The plain meaning of this provision is that "other enclosed structure[s]" are permitted for the purpose of housing and working on automobiles.

The requirement, in section 4 of the covenants, that each dwelling shall have an attached garage does not conflict with the provision allowing "other enclosed structures" housing automobiles. Accordingly, we conclude that no issue of material fact exists and that, even viewing the facts in the light most favorable to the defendants, the covenants allow for detached garages.

We next address whether the trial court erred in concluding that the plaintiff is not required to obtain approval for a detached garage. The covenants require the grantor's approval for numerous things, including the design of a mailbox, the use of vinyl siding, and the construction of any "outbuildings or appurtenances." The grantor, "in its sole discretion," had "the right to approve the plans and specifications of all residences and other structures." The covenants provide that, after the grantor had sold all the lots, the lot owners "may . . . designate a successor to such approval responsibility." (Emphasis added.) The plaintiff represents, and the owners do not contest, that the grantor sold its last lot in 2004 and, being a limited liability company, was dissolved in 2008.

The covenants assume that the grantor's approval rights would pass to a homeowners' association; several sections refer to the transfer of approval authority to a homeowners' association. For example, section 6 of the covenants, governing design and plan approvals, provides that "[u]pon relinquishment of responsibility for approvals to any future Homeowners' Association, the Grantor shall have no liability." The defendants acknowledge that no homeowners' association or other "independent design review authority" exists.

The owners contend that the covenants are ambiguous because: (1) a successor authority may be assigned the grantor's approval powers by a majority of the lot owners, but the creation of a homeowners' association requires a unanimous vote; (2) they contain both obligatory requirements and approval requirements; (3) they do not specify what happens if there is both a successor authority and a homeowners' association; and (4) they do not specify what happens if there is neither a successor authority nor a homeowners' association. We conclude that these points do not raise a genuine dispute of material fact. See Franciosa v. Hidden Pond Farm, Inc., 171 N.H. 350, 354 (2018) (stating that fact is material if it affects outcome of litigation under applicable substantive law). The owners argue that they have the right to

2

enforce the covenants. See Varney v. Fletcher, 106 N.H. 464, 467 (1965) (stating that lot owners can enforce reciprocal covenants). However, the lot owners declined the grantor's approval rights when they failed to establish a homeowners' association or other successor authority. Cf. Nashua Hospital v. Gage, 85 N.H. 335, 343 (1932) (stating that restrictive covenants may be abandoned when not enforced).

The owners offer no explanation how the grantor's approval rights can be exercised in the absence of a successor authority. The trial court correctly identified the many obstacles inherent in such an exercise. Even viewing the record in the light most favorable to the owners, we conclude that the covenants do not allow for the enforcement of the grantor's approval rights in the absence of a successor authority.

Finally, we address whether the trial court erred by not considering the plaintiff's proposed garage to be a commercial use. The covenants prohibit commercial uses, as do the town zoning regulations. The plaintiff stipulated that he will not use the proposed garage for commercial purposes. The town issued the plaintiff a building permit, which it could not have done were the garage to be used for commercial purposes. The owners argue that, given its size and equipment, the proposed garage "could easily be used for a commercial enterprise, regardless of the Plaintiff's subjective intent." The covenants prohibit actual commercial uses, however, and not uses that "could easily" become commercial.

Pike Industries, Inc. v. Woodward, 160 N.H. 259 (2010), is inapposite. There, the issue was whether the landowner had continued its ongoing commercial use of the property, for zoning purposes, by maintaining its plant in readiness to produce commercial materials, not whether the size of and equipment in its buildings, regardless of their use, constituted a commercial use. Id. at 263. In the case at hand, the record does not support that the plaintiff will maintain the proposed garage "in a state of readiness," id., for commercial activities. Accordingly, we conclude that the trial court did not err by finding that the proposed garage is not a commercial use.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3