JOHN WASON v. RUFUS SANBORN, BETSEY SANBORN, AND J. FRANK SANBORN.[*]

The court is not always bound to issue an injunction by the mere fact that damages, though substantial, have been recovered, and the title established in an action at law; nor where the injunction will not restore the plaintiff to his former position; nor where an action at law would furnish a full indemnity.

The court will consider the inconvenience and expense, to which the injunction will subject the defendant, as well as the damage of the plaintiff.

The title is not established by a recovery at law, unless, by the pleadings or by proper allegations, it appears what points were in issue, and what must have been decided.

No injunction will be issued unless its terms are in themselves definite and distinct.

THIS is a petition for a temporary injunction, addressed to Nesmith, J. in vacation, and referred by him to the Court.

It is attached to a bill in equity, in which the the plaintiff alleges that he has been, for many years past, seized in fee and possessed of certain meadow lands in Chester, containing 15 acres, (described,) with the privileges, &c., lying on both sides of the Shackford brook. In 1848, Rufus Sanborn, husband of the defendant, Betsey Sanborn, was possessed of certain lands in Chester, lying on said brook, above the plaintiff's meadow, and he erected a dam across the brook, and a saw and planing mill, which were operated by him, and afterwards by the defendants, his grantees. The water of the brook is penned back by said dam, and accumulated so that on opening the gates the same has been so willfully, carelessly and negligently discharged into the brook below, that the plaintiff's meadows have been repeatedly inundated and overflowed and damaged, the crops diminished, and soil washed away, to his damage, two hundred dollars.

By the willful, careless and negligent use of said saw and planing mill, the saw dust, slabs, sticks, bark, chips, shavings, and other refuse have been thrown, or suffered to fall into said brook, and to be borne upon the said meadows and the low places thereof, when the same have been overflowed, and, at other times, deposited along the banks of said brook, to be carried and deposited upon said meadows by the succeeding freshet, or rise of water; whereby, said meadows have been impaired in quality and value, the crops diminished, the labor and expense of gathering the same increased, to the damage of the plaintiff, two hundred dollars.

After repeated and unheeded remonstrances, the plaintiff, on the 27th of September, 1860, commenced an action at law against said Rufus,

---

[*]This case was not at the time of its decision regarded as of consequence to be reported, but as it has been cited as authority in a more recent case, it is here printed.—REPORTER.

for the damage then done to his said meadows, wherein, at the April Term of this court in Rockingham county, 1861, a verdict was rendered for the plaintiff against the said Rufus, and at the December law term of said court, judgment was ordered for the plaintiff on said verdict, for $41.45, and for his costs $113.90 ; which judgment is yet unsatisfied. The said Rufus has conveyed his title to his lands in Chester, on which are said dam and mills, so that the same are now held by the defendants, Betsey Sanborn, his wife, free from the control or interference of her husband, and Luther C. Sanborn, his son. The said saw and planing mill is now operated by the defendant, J. Frank Sanborn, son of said Rufus, who, as the plaintiff believes, is a minor, under 21 years of age, and irresponsible. The defendants by accumulating and penning back the water aforesaid, and improperly, negligently, and carelessly discharging the same, continue to overcharge said brook, so that it does not flow as usual, but overflows plaintiff's meadows, washes away his soil, and does other injury as aforesaid, to his damage. The defendants continue to cast, or cause, or permit to be cast, or to fall, into said brook, the saw dust, chips, bark, shavings, and other waste and refuse from their mill, to the plaintiff's great damage and annoyance.

The bill prays a writ of injunction to restrain the defendants, &c., from discharging the waters of said brook, so penned back and accumulated, in such unusual quantities as to overflow his meadows ; and from casting, or permitting to be cast, or to fall, into said stream, the saw dust, chips, sticks, slabs, bark, shavings, refuse and other waste from said saw and planing mill. Dated Feb. 14, 1862.

Notice was ordered of the bill and petition and given, and affidavits were taken in support of the allegations of the bill.

*A. Tuck* and *F. O. French*, for the complainant.

*Morrison, Stanley* and *Clark*, for the defendant.

BELL, C. J. There is a tendency of mind which leads the student of the common law to desire to reduce every thing to fixed and definite rules ; to lay down those rules broadly and generally with reference to a few circumstances, and to refuse to allow any regard or attention to others, which, though perhaps not so important, ought not to be overlooked. The tendency of this leaning is in the right direction. Wherever a certain and fixed rule can be established, it is immensely important that it should be. But there is a large class of cases and of questions, where the circumstances admit of so numerous variations, that no rule can be framed comprehensive enough to reach them. In such cases decisions must be made in the exercise of a sound judgment upon all the circumstances, and such decisions can furnish rules for new cases, only where the same circumstances occur, yet there is a constant striving to treat them as precedents, and to regard the expressions used by the courts in stating the grounds of their decisions, and which are true perhaps in regard to the case in hand, as universally true. The effect of this in cases depending in courts of equity, is marked and bad. It has too of-

ten been considered, that what the court decline to do in a particular case, they have no authority to do, which we think is often entirely untrue. There is a wide distinction between declining to act because the case is not thought to require it, and not doing the same thing because the court is without power. No jurisdiction can be more ample and unqualified than that of this court in cases of injunction. "*They may grant writs of injunction, whenever the same shall be necessary to prevent injustice.*" This power is habitually exercised in the cases, and agreeably to the rules, which govern such proceedings in courts of equity elsewhere; but the limit of the jurisdiction is to be found within no narrower limits than those prescribed by the statute. When the court decide that they will not issue an injunction in any case, it is never a decision that they have not jurisdiction, but only that the case, as it is presented to them, is not deemed a suitable one for its exercise. So where it is decided in a particular case, that it is proper to issue the writ, it is not to be supposed that the writ is to be issued in every case of the same kind in its general features, since there may be further circumstances which render the process unsuitable.

This bill is evidently brought under the idea that wherever a party has recovered damages in a suit at common law, for the flowage of his land, he is entitled, as of course, to the aid of the court to compel the discontinuance of the wrong, if the party persists in it; and this petition is presented under the idea that wherever a party may be entitled to an injunction to suppress a nuisance, after a trial and hearing of his case, he will, of course, be entitled to a preliminary injunction, as soon as he has filed his bill; but we incline to think that neither of these things is a matter of course,

It is very commonly said, that the court is generally unwilling to grant an injunction in a case of nuisance, until the right has been settled in an action at law: *Hunt* v. *Mayor of Albany*, 3 Paige, 213; *Reid* v. *Gifford*, 6 John. Ch. 19; *Porter* v. *Witham*, 17 Me. 292; though this does not apply where the title is clear, or the right is not disputed. *White* v. *Forbes*, Walk. Ch. 112; *Gardner* v. *Newburg*, 2 John. Ch. 162; *Robinson* v. *Pittinger*, 1 Green Ch. 57. It seems to have been inferred that the converse of this is true, and that, wherever the right has been determined at law, it will be a matter of course that an injunction will be granted. But we think a more reasonable rule is laid down in the note to Adams on Equity 211, on the authority of *Wood* v. *Sutcliffe*, 2 Sim. N. S. 163 : "The court is not always bound by the mere fact, that damages, even if substantial, have been recovered and the legal title is established. It will consider whether the complainant is entitled to the equitable relief, and moreover will not grant it where an injunction will not restore the party to his former position."

To authorize the court's interference by injunction, there should appear imminent danger of great and irreparable damage, and not of that for which an action at law would furnish full indemnity. *Croton Turnpike* v. *Rider*, 1 John. Ch. 611; *Bemis* v. *Upham*, 13 Pick. 169; *Van Winkle* v. *Curtis*, 2 Green Ch. 422.

"In order to entitle the plaintiff to such interference for the purpose

of protecting his property," says Daniell, (Ch. Prac. 1859,) "pending the decision of his legal title, he must show, at least, a strong *prima facie* case in support of the title which he asserts, and it is also necessary to show that he has not been guilty of any improper delay in applying to the court,  *  *  The court has then to consider the degree of inconvenience and expense to which granting an injunction would subject the defendant, in the event of his being in the right; and on the other hand the nature of the injury which the plaintiff may sustain in the event of his complaint turning out to be well founded, and the court refusing to interfere pending the decision of the question at law; and thus balancing the question between the two parties, and the extent of inconvenience likely to be incurred on the one side and on the other, the court must exercise its discretion, whether the injunction should be granted, or withheld."

In the present case, there are objections to the issuing of the injunction requested. The recovery was had in an action alleging the penning back and accumulating the water, and allowing it to run in a time of freshet, so that his meadow was overflowed, and also suffering the saw-dust, &c., to fall into the brook, by which it was carried upon his meadow. Was the recovery for which, or both, of these injuries? They are of a different character, and stand on different ground. It must be the duty of a party, who expects the aid of an injunction, to state his grievance in such a way that it will appear for what he has recovered; or to supply the want of that distinctness in the record by proper allegations in the bill. Here, for aught that appears, the recovery might be had for either grievance alleged, and it cannot be ascertained which. If the recovery was for flowing only, no injunction ought to go as to the saw-dust, &c., and the reverse.

The injunction sought as to the water seems to us to be indefinite and uncertain and impracticable. It could never be known or determined whether the injunction had been disregarded; and whatever course the miller might adopt, whether he raised his gates, or shut them, if a freshet should overflow the plaintiff's meadow, the defendant would be exposed to be charged with a violation of the injunction. The necessity that the subject matter should be capable of being clearly ascertained, is most obvious, in order that the mandate of the court may be certain and without ambiguity, that what the defendant is commanded to do or not to do may be certain and definite. In *Olmstead* v. *Loomis*, 6 Barb. S. C. 152, where the prayer was for an injunction to restrain the defendant from drawing water from a dyke, so as to deprive the complainant of the use of the water sufficient to carry a forge, the court say : " The only object or benefit of such an injunction would be to give the plaintiffs a summary method of punishing the defendant for any accidental, or willful, or careless violation of their rights. We have been unable to find a case, where under such circumstances an injunction has been granted. It would leave open for contest upon affidavits, upon every complaint for breach of the injunction, the facts whether the plaintiffs had used as much water as they were entitled to. " In the language of the L. C. in *Ripon* v. *Hobart*, 3 Myl. & Keen. 169, we may say," says Pratt, J.,

"what purpose would such an injunction serve? It would give no information, it would prescribe no certain rule or limits to the defendants. It would not in any manner of way be a guide to them, if it did not operate as a snare. It would in reality amount to nothing more than a warning, that if they did any thing that they ought not to do, they would be punished by the court, but it would leave it to themselves to discover what was forbidden and what allowed." The injunction in this case was against using a steam engine, so as to injure the banks of the River Witham. "This case," it is said in *Olmstead* v. *Loomis*, "falls far short of those cases, where the rights of the parties were clearly ascertained, and where the courts have interposed by injunction for the purpose of preventing great and irremediable mischief. No such irreparable mischief is apprehended in this case. No threatened danger calls for such a remedy. A simple action at law to recover the damages, for any thing that has yet been made to appear, will be amply sufficient, not only to compensate the plaintiff for the injury sustained, but to prevent a repetition of the wrongs on the part of the defendants." These remarks seem to us to apply in this case.

The action at law in this case was brought against one of these defendants, and it does not appear that he has now any interest in the mill or concern with it whatever; and it is not alleged that the present holders derive their title from him pending, or subsequent, to that suit. It is not to be regarded, then, as a case where the rights of the parties have been settled at law, as between the parties in interest now before us. A preliminary injunction is ordinarily granted to prevent irreparable mischief, to put an end to litigation perpetually recurring, or to preserve the subject matter of the controversy in its present condition until the dispute is decided. This is neither of these cases. The damages may be well compensated in a suit at law, and at all events they are inconsiderable. It does not appear that a suit against these defendants would not end the controversy, if framed so as to settle any thing. The subject of controversy needs no injunction to preserve it.

Under all the circumstances of this case the injunction must be denied.

Upon this opinion being delivered the bill was dismissed by the plaintiff.