## DANA v. CRADDOCK & a.

A merely theoretical injury to land does not furnish ground for interposition by injunction.

The action of commissioners, appointed under "An act providing for highways to public waters in the state," c. 97, Laws 1887, in laying out a highway. is a judgment which cannot be collaterally attacked; nor can the method of their appointment be brought in question collaterally.

For error in the appointment of such commissioners and in their proceedings, an adequate and direct remedy, if seasonably exercised, exists in the common-law power of general superintendence for correcting errors of courts of inferior jurisdiction where the laws have not expressly provided a remedy.

A highway laid out under such act, from a highway "to a spike on the margin of the lake," a public water, extends to the changeable margin of the lake, whether moved by natural causes or by the construction of a wharf.

The damages awarded a land-owner in such a proceeding are in full compensation for all injury resulting to his estate from the construction and use of the road, including diminution of the right of building a wharf at the point where the highway reaches the water.

BILL IN EQUITY, for an injunction against the erection of a bridge between Liberty island in Lake Sunapee and the mainland, and for general relief. In the original bill Mrs. Dana was the sole plaintiff. The defendants demurred, and the bill was amended by joining the attorney-general as a plaintiff. The bridge has been built, and has been partly demolished. The question is, whether either of the plaintiffs is entitled to a decree against its restoration, or for its removal or alteration. Mrs. Craddock owns the island, and Mrs. Dana owns the land at the other end of the bridge. The length of the bridge is two hundred feet more or less. At each end, for a considerable distance, it is made of earth and stones, and the rest is a wooden structure on wooden posts.

Summary of the amended bill:—The strait between the island and the mainland is a public water, and has been commonly used for navigation by rafts, boats, and vessels. In winter it has been used as a highway for public travel on the ice with ox and horse teams. and the use of it as a way for hauling wood and timber for use on Mrs. Dana's land is indispensable to the convenient and profitable enjoyment thereof. The bridge, if restored, will wholly obstruct and destroy the use of that part of the lake for all purposes of navigation, and as a winter road.

Summary of the answer:—The lake, including the strait, is

public water.  Mrs. Dana owns only to the water's edge.  The defendants, in common with the rest of the public, have a right to the reasonable use of the waters and bed of the lake.  They deny that the strait has been commonly used for navigation by rafts, boats, and vessels, and say that it always has been and is practically unnavigable much of the time, and at all times except by small boats of light draught; and they traverse the allegations concerning a winter road on the ice.  The island is valuable as a place of public resort, and in 1882 was connected with the shore upon the plaintiff's land by a bridge, which was used by the defendants and the public for access to the island until a portion of it was removed by Mrs. Dana's husband.  February 11, 1889, upon the petition of the defendants and others, commissioners appointed by the governor and council, under Laws of 1887, c. 97, laid out a highway on the mainland from an existing highway " to a spike on the margin of the lake near the northerly side of the shore end of the Liberty Island bridge," being the bridge aforesaid.  For the purpose of connecting the island with the highway thus laid out, and replacing what Mr. Dana destroyed, the defendants have hauled lumber; and, unless restrained, they intend to rebuild the bridge.  They deny that the bridge, when rebuilt, will obstruct or destroy any such navigation or such use as a highway as the strait is capable of, or injure Mrs. Dana's property, or infringe her rights, or in any way impair the reasonable public use of the lake.

The commissioners appointed by the governor and council gave notice of a hearing upon the petition for the highway to the plaintiff and others.  Mrs. Dana, the plaintiff, appeared by counsel at the hearing, and was awarded one dollar damages.  No appeal was taken.  The defendants contend that the bridge cannot be abated as a nuisance unless it is proved to be an unreasonable use of that part of the lake.  The plaintiff contends that, as a matter of law, she is entitled to an injunction without a trial of any question of reasonableness; that notice should have been given before the appointment of commissioners; that the defendants have the burden of proving such notice; that the record shows there was none, and the plaintiff offers to prove there was none.

*A. S. Wait* and *G. R. Brown*, for the plaintiff.

*W. L. Foster*, for the defendants.

BLODGETT, J.  Since the bill was amended by joining the attorney-general as a plaintiff, the legislature has granted the defendants a revocable license (of which judicial notice may be taken—58 N. H. 93, 96) to maintain a passway between Liberty

island in Lake Sunapee and the mainland, which reads as follows :

SECTION 1. The passway that has been built between Liberty island in Lake Sunapee and the mainland may be maintained and renewed by any owner or lessee of any part of said island, subject to such regulations and restrictions as may be imposed in any legal proceedings brought or to be brought by public authority for the protection and maintenance of public rights.

SECT. 2. The license given by the first section of this act for the maintenance and renewal of said passway may at any time be changed by an amendment, and wholly revoked by a repeal of this act, and no private right shall be acquired under it by lapse of time.

SECT. 3. This act shall not impair any private right, whether involved in any pending suit or not.

SECT. 4. This act shall take effect and be in force from and after its passage.

The attorney-general being but the representative and agent of the state, the effect of the act was to remove the only ground upon which he could ask for an injunction to demolish and remove the passway as a public nuisance, and he has accordingly withdrawn as plaintiff from the pending suit. This leaves Dana the sole plaintiff, and the bill thus becomes a private bill to abate and restrain a public nuisance, to the maintenance of which the public consent has been duly obtained. The public therefore must be regarded as not injured by the defendants' acts, and when the question of regulations and restrictions is settled, it does not appear that there will be any ground on which an action by the plaintiff can be maintained. Certainly the essential elements which are requisite successfully to invoke the aid of equity by way of injunction are wanting. No case of strong and clear injustice is shown, nor is there any ground to apprehend that loss of health, loss of trade or business, destruction of the means of subsistence, or permanent ruin to property, may or will ensue to the plaintiff from the defendants' acts. No substantial, serious, and irreparable damage appears. For the subjection of her land to the easement of a highway, she has, after a full hearing in which she participated, been awarded the sum of one dollar; and no appeal has been taken from the award. This strongly indicates a theoretical injury merely to her land; and such an injury does not furnish ground for interposition by injunction. *Bassett* v. *Salisbury Co.*, 47 N. H. 426, 437, 442. And if the injury is other than theoretical, the case would seem to be one in which the court might properly consider whether the loss to the defendant by the granting of an injunction would not be altogether disproportionate to the injury to the plaintiff if left to her remedy at law. *Wason* v. *Sanborn*, 45 N. H. 169, 171, 172; *Bassett* v. *Salisbury Company*, 47 N. H. 427, 438.

But aside from the failure to appeal, it is conclusively to be presumed that the damages awarded the plaintiff were full compensation for all the injury resulting to her estate from the construction and use of the road. Any damage to which she might be entitled by diminution of the value of her right to build a wharf at that point, was necessarily included in the damages awarded for the diminution of her whole estate of which the right to build a wharf was a part. This right did not nullify the statute, which authorized a road that would give the public access to the public water. If she had built a wharf there after the road was laid out, she would not have discontinued the highway, nor cut off the right of access to the water which was judicially established by the laying out of the road. By building the wharf she would have extended the road to the water line which the wharf had pushed further into the lake. *People* v. *Lambier*, 5 Den. 9, 15, 17; *Conn. River Lumber Co.* v. *Olcott Falls Co.*, 65 N. H. 290, 381. Any other result would enable her to obstruct and destroy that public access to the water which the public had obtained by paying her for all its impairment of her estate.

For good reasons, a deed bounding by fixed monuments on the bank of a fresh water river carries the boundary to the middle of the stream. *Kent* v. *Taylor*, 64 N. H. 489, 490, and authorities cited. For equally good reasons, the highway laid out in this case from a highway "to a spike on the margin of the lake," goes to the lake in all stages of the water. The report of the commissioners shows that the road was laid out under *c.* 97, Laws 1887, and for the purpose of accomplishing the object of that statute, which was to give the public access to public waters from common highways. The title of the act is "An act providing for highways to public waters in the state." The first section authorizes the appointment of commissioners "to lay out a highway from any existing highway to any public water in this state." The object of the statute and the intention of the commissioners would be defeated if the road did not extend beyond high-water mark. The construction of deeds which extends the line of the premises conveyed beyond fixed bounds on the banks of fresh water rivers to the middle of the stream, carries into effect an implied intent of the parties that is in conflict with the literal construction of the deeds; and so here the same method of construction accomplishes the intent of the legislature and the commissioners by giving the public access to the public water of Lake Sunapee over the road laid out for that purpose. And in the laying out of this highway, it was no more necessary to erect a monument beyond the line to which the plaintiff might see fit to extend the dry land (whether the extension were called a wharf or anything else would be immaterial), than to erect a monument at the lowest possible line of low water in the natural condition of the shore, and no more necessary to describe the unknown extremity of a non-existing wharf,

than to describe the most distant point to which the water might ever recede as the terminus of the road. The object of the laying out being to accomplish the object of the statute, the construction of the laying out is, that the road extends to the changeable margin of the water whether that line is moved by natural causes or by the construction of a wharf, and that the plaintiff has been awarded damages accordingly.

The statute of 1891, adopting the existing state of things, authorizes the extension of the road through the lake to Liberty island. This extension furnishes a means of access not only to the island, but to the deepest water on that route between the island and the mainland. The passway is a wharf as well as a road. If the plaintiff, as one of the public, desires any regulations or restrictions imposed on the passway that will reasonably secure her enjoyment of the public right of navigating the lake, she can be heard at the trial term "in any legal proceedings brought or to be brought by public authority for the protection and maintenance of public rights."

Whether the highway is a legal one or otherwise, is not a question for consideration in this proceeding. The commissioners had jurisdiction of the subject-matter, and the laying out by them was a judgment which cannot be collaterally attacked. *Horne* v. *Rochester*, 62 N. H. 347, 348; *Fowler* v. *Brooks*, 64 N. H. 423, 424. And whether notice should have been given of the petition to the governor and council for the appointment of commissioners, is also an immaterial question in the case. The commissioners were officers *de facto*, and their official title cannot be contested collaterally (*Jewell* v. *Gilbert*, 64 N. H. 13), and moreover, instead of attacking their title in a suit brought for that purpose, the plaintiff appeared at the trial before them and was heard on the question of laying out as well as on that of damages.

"But there is no method," say counsel, of "taking advantage of the wrong directly by any judicial proceeding," and so "it is open to attack collaterally anywhere wherever the question arises." This contention obviously overlooks the decision in *Boody* v. *Watson*, 64 N. H. 162. Since that decision, it is not an open question in this state whether the plaintiff had an adequate and direct remedy, if seasonably exercised, for any error of which she was entitled to complain in the appointment of the commissioners and in the laying out of the road. The laying out, if in some respects like the laying out in *Keefe* v. *Railroad*, 63 N. H. 271, 272, was nevertheless a judgment, correctible by the common-law power of superintendence that issued writs of error, and all other writs and processes necessary for the furtherance of justice and the due administration of the laws.

If the attorney-general desires to obtain an imposition of regulations or restrictions upon the maintenance or renewal of the passway for the protection of the public rights, or if the plaintiff so

desires, and obtains the requisite authority, a trial may be had at the trial term to determine what, if any, restrictions should be imposed; otherwise the bill will be dismissed.

                                                            *Case discharged.*

DOE, C. J., did not sit: the others concurred.