108

Rockingham
No. 7285

### WILLIAM M. GRIFFIN

### v.

### NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY & a.

February 28, 1977

*Griffin, Harrington, Brigham & Ritzo,* of Portsmouth (*Mr. Charles A. Griffin* orally) for the plaintiff.

*Edward F. Smith, Andre J. Barbeau, Michael M. Black, Thomas W. Kelliher,* and *Paul V. Kenneally* (*Mr. Barbeau* orally) for the New Hampshire Department of Employment Security.

*New Hampshire Legal Assistance, George C. Bruno,* of Manchester, and *H. Neil Berkson,* of Keene (*Mr. Berkson* orally) as amici curiae.

LAMPRON, J.   Appeal by the plaintiff to the superior court under the provisions of RSA 282:5 G(1) (Supp. 1975), (3) from a decision of the appeal tribunal of the department of employment security denying him benefits because he failed, without good cause, to accept available, suitable work. RSA 282:4 M (Supp. 1975). The Trial Court (*Douglas,* J.) reversed the tribunal's decision and issued a decree, which we affirm, ordering the department to pay full benefits to plaintiff from and after September 22, 1974. The court further ordered the defendant to pay plaintiff's attorneys' fees in the amount of $944.45. We set aside this part of the court's decree.

Plaintiff worked for 30 years as a piping detailer for the Portsmouth Naval Shipyard. In June 1972, due to a reduction in work force, plaintiff was laid off. He subsequently retired from his position at the Yard. From November 1972 to May 27, 1974, plaintiff, a lifelong resident of Portsmouth as well as a homeowner there, was employed by defendant United Engineers and Contractors, Inc., as a piping detailer on a power plant construction job in Newington. His rate of pay was $6.00 per hour. Because his work was completed and there was no other work for him to do, United Engineers laid him off. He filed for unemployment compensation benefits and was awarded and received benefits at the rate of $80 per week through the week ending September 21, 1974.

During the months of July through September 1974, plaintiff made personal contact with or sent resumes to several companies and to one employment agency. These companies were located in Maine, New Hampshire, Massachusetts, Ohio, and Pennsylvania. Plaintiff indicated that he was interested in work in the piping design field in the New England area. He also contacted the Portsmouth office of the department of employment security with regard to possible job referrals. He was informed by all these sources that no employment was available in his field in New England.

However, in late September, General Devices, Inc., of Norristown, Pennsylvania, one of the companies he had contacted earlier, offered him a position at Greenwich, Connecticut, which is near the New York border.

The position offered was full time at a rate of pay of $11 per hour plus a subsistence allowance of $86 per week. Plaintiff refused the offer because he felt the distance from his residence, approximately 230 miles, was too great for him to come home on weekends. Plaintiff was 61 years old at the time and his wife did not want him to be so far from home. Plaintiff reported this offer and his refusal to the department, and he was told the matter would be taken under advisement. Plaintiff's benefits were disallowed "from September 22, 1974 to October 19, 1974 and until available." The department's appeal tribunal affirmed this decision.

## I. PAYMENT OF BENEFITS

RSA 282:4 M (Supp. 1975) provides that an individual shall be disqualified for benefits: "If the commissioner finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner or to accept suitable work when offered him. . . ." In determining whether or not work offered a claimant is suitable, the commissioner is to consider, among other factors: "The distance of the available work from his residence, but such distance shall not be substantially greater than that distance to all those places to which others living in the same town or city travel for work which utilizes similar or related skills or services, and also to where he acquired his currently available annual earnings . . . ." RSA 282:4 M(1) (f) (Supp. 1975).

RSA 282:3 C (Supp. 1975) provides that to be eligible for benefits, the commissioner must find that claimant is ready, willing and able to accept and perform suitable work on all the shifts and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work."

The department maintains that plaintiff's high skill is a factor to be taken into account in determining his labor market and the availability of work for him. By its very nature his type of work is performed in only a very few locations such as shipyards and power plants. To gain access to job vacancies plaintiff must expand

the market area in which he offers his specialized skill. Other factors to be considered are the depressed economic condition which then prevailed and the fact that plaintiff retired from the Naval Shipyard, thus ruling it out as a place of employment. RSA 282:4 M (Supp. 1975).

The department argues further that the job offer made to him was in the job market in which plaintiff repeatedly sought employment and was precisely the job for which he was trained and experienced. It also argues that work at a location several hundred miles away which may not have been suitable in the first few weeks of unemployment was suitable after the passage of months of unemployment. RSA 282:4 M(1)(f) (Supp. 1975). Plaintiff's refusal of this job offer, the department maintains, disqualified him from receiving benefits. RSA 282:3 C (Supp. 1975).

Employees of the department testified that distance has nothing to do with suitability. Plaintiff should have been willing to accept employment in Chicago or probably Pascagoula, Mississippi. Plaintiff should have been ready to "pick up" and move. Although the department claims that plaintiff's job contacts were not sufficient to meet the test of a search for work by a reasonably prudent person, there was testimony by a witness for the defendant that plaintiff's efforts were both proper and reasonable.

Plaintiff testified that at the age of 62 he was not ready to "pick up" and move from Portsmouth to a place 10 miles from New York City. He testified that he was willing to travel to work about 65 to 70 miles to Bath, Maine. A long time fellow employee at the Portsmouth Navy Yard testified that, of the 200 pipe detailers employed there, none commuted from Connecticut and all came from an area within 40 miles of the Yard.

██ The trial court found that plaintiff was ready to perform suitable work for which there was a market for the services he offers and that he exposed himself to employment as would a reasonably prudent man seeking work, given the economic conditions. These findings were warranted by the evidence and the court properly ruled that plaintiff met the requirements for eligibility under RSA 282:3 C (Supp. 1975) being "ready, willing and able to accept and perform suitable work." *Chaisson v. Adams,* 114 N.H. 219, 222, 317 A.2d 791, 793 (1974). The court thus properly found and ruled on the evidence that plaintiff had good cause to refuse the offer to work in Greenwich, Connecticut, and that he should

not have been disqualified for benefits under RSA 282:4 M (Supp. 1975). We affirm the court's decree that plaintiff was entitled to full benefits from and after September 22, 1974. *Industrial Comm'n v. Parra,* 111 Colo. 69, 137 P.2d 405 (1943); *Lauder v. Bd. of Review of Industrial Comm'n,* 29 Utah 2d 121, 122–23, 506 P.2d 50, 51 (1973); 76 Am. Jur. 2d *Unemployment Compensation* § 70 (1975); Freeman, *Able to Work and Available for Work,* 55 Yale L.J. 123, 124 (1945); *see Goings v. Riley,* 98 N.H. 93, 95 A.2d 137 (1953).

## II. AWARD OF ATTORNEYS' FEES TO PLAINTIFF

The trial court allowed plaintiff his attorneys' fees and their disbursements in the amount of $944.45 to be paid by the department. The court's basis for this award is the following. The intent of the Unemployment Compensation Law (RSA ch. 282) is to insure that a worker, undergoing greatly reduced income while out of work, could still net his compensation payments without fear of an attorney's lien on his benefits, RSA 311:13, or being "charged" a fee by an officer of the court, RSA 282:13 B (Supp. 1975). If fees, flat or percentage had to be paid, claimants would either be unable to secure counsel for lack of money to pay a retainer or would lose even if they won by having their subsistence compensation reduced by attorney's fees. The award was ordered "to avoid reducing Petitioner's award which was wrongfully withheld by the Department." The award was made under prayer No. 3 of plaintiff's petition for "such other and further relief as may be just and proper."

Amici curiae endorsed this reasoning by brief and oral argument before this court. They maintain, as did the trial court in its decree, that attorney's fees are authorized by RSA 282:13 B (Supp. 1975). Amici also support the trial court's equitable power to award attorney's fees to put the innocent party in the same position in which he stood, but for the other party's misconduct, and to discourage repetition of obdurate or bad faith conduct by the latter.

RSA 282:13 B (Supp. 1975) reads as follows: "LIMITATION OF FEES. No individual claiming benefits shall be charged fees of any kind in any proceeding under RSA 282 by the commissioner of the department of employment security, or his representatives or any court or any officer thereof. Any individual claiming benefits before the commissioner or his representatives may be represented by counsel or other duly authorized agent; but no such counsel or agents shall either charge or receive for such services more than an

amount approved by the commissioner. Any person who violates any provision of this subsection shall be guilty of a misdemeanor."

We have held in *Vincent v. New Hampshire Department of Employment Security,* 115 N.H. 485, 343 A.2d 640 (1975), that the above statute does not authorize a claimant for unemployment compensation, who is unsuccessful before a lower tribunal, to recover from the department the costs of an appeal to this court where a favorable decision was obtained.

RSA 282:13 C provides that a claimant cannot assign, pledge, or encumber any right to unemployment compensation benefits. It further exempts such benefits from levy, execution and attachment for the collection of debts, with certain exemptions not material here. RSA 311:13, which gives an attorney a lien on the proceeds of an award to his client, specifically provides that there shall be no such lien in matters arising under the unemployment compensation statute. It is evident that these provisions are intended to insulate compensation benefits from imprudent acts by the claimant and to safeguard them from the reach of his creditors.

We hold that the provision in RSA 282:13 B (Supp. 1975) that a counsel or agent who represents a claimant shall not "either charge or receive for such services more than an amount approved by the commissioner" is intended, like the above provisions, as further protection of the claimant's benefits from exorbitant fees of his own counsel. Its title, "Limitation of Fees," cannot be interpreted as intending to grant authorization to the commissioner or a court to award counsel fees to be paid by the department. RSA 282:10, also mentioned as a possible source of such authority, authorizes certain expenditures from the administration fund. However, expenditures therefrom for legal costs must be "legally chargeable" to the state or authorized by state law which is not the situation in this state. 4 Employment Security Manual § 1010, A, C, D. Hence there is no statutory authority in the Act to impose on the state the payment of claimant's attorneys' fees. *Davis v. Avnet,* 192 Md. 626, 631, 65 A.2d 308, 311 (1949); *Beck v. Workmen's Compensation Bureau,* 141 N.W.2d 784, 790 (N.D. 1966); *cf. Bradbury v. Shaw,* 116 N.H. 388, 360 A.2d 123 (1976).

We agree with the trial court that the department, which must be ever alert to insulate its funds from improper claims, should nevertheless avoid being arbitrary. Standards are necessary for the efficient operation of the program but the realities of the varying

practical situations of applicants must be recognized. "Adherence to standards grounded upon a misconception of applicable legal principles only serves to reinforce the growing public perception of such agencies and their operations as mired in counterproductive pedantries." *Morgan v. White,* 168 Conn. 336, 362 A.2d 505, 511 (1975).

Argument has also been advanced that absent statutory authority, the court in the exercise of its general equitable powers could order the department to pay plaintiff's counsel fees in certain circumstances. This power has been exercised by the federal courts, especially in public interest litigation. Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv. L. Rev., 849 (1975). Bad faith or obstinacy on the part of the defendant manifested by its acting "vexatiously, wantonly, or for oppressive reasons" has been recognized as an exception to the general rule that attorney's fees are not ordinarily recoverable by the prevailing party. *See F. D. Rich Co., v. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974); *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 (1975); Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts,* 122 U. Pa. L. Rev. 636, 689 (1974); 8 Conn. L. Rev. 551, 556 (1976).

█ The trial court found that the department "wrongfully withheld" an award of benefits to the plaintiff. However, the court made no finding that the department acted in bad faith or that its conduct constituted "unreasonable, obdurate obstinacy." *See Stolberg v. Members of Bd. of Trustees for State Col. of Conn.,* 474 F.2d 485, 490 (2d Cir. 1973). Lacking a finding of bad faith on the part of the defendant, we need not decide if such a finding would be recognized as an exception to the general rule that the parties pay their own counsel fees. *Merrimack Farmers Exch., Inc. v. Elliott,* 111 N.H. 121, 123, 276 A.2d 258, 260 (1971). Nor need we define at this time what conduct would constitute bad faith on the part of the department if such an exception was recognized.

*Decree affirmed in part, and
set aside in part.*

Bois and Douglas, JJ., did not sit; the others concurred.