Rockingham
No. 79-086

FRANCES PUGLIESE

v.

TOWN OF NORTHWOOD PLANNING BOARD

FRANCES PUGLIESE *& a.*

v.

JAMES M. STEELE

October 12, 1979

*Upton, Sanders & Smith*, of Concord (*J. Gilbert Upton* orally), for the plaintiff.

*Maynard, Perkins & Phillips P.A.*, of Concord (*Roger B. Phillips* orally), for the defendant James M. Steele.

*John R. Maher*, of Portsmouth, orally and by brief, for the defendant town.

BOIS, J. The plaintiff appeals from a decree for defendant Steele in a petition to quiet title, and for defendant town in a companion action for a restraining order in which the town cross-petitioned for compliance with its zoning ordinances. Seasonable exceptions to certain findings and rulings of law were reserved and transferred by the Trial Court (*Goode*, J.). We overrule in part and sustain in part.

Three issues are presented to us by the plaintiff's appeal: whether the trial court failed to make findings of essential facts sufficient to support its decision as to the location of a disputed boundary line; whether there is sufficient evidence to support that part of the decree requiring the plaintiff to move her building from Steele land; and whether there is any basis for the award of damages to each defendant.

The defendant Steele owned land along the east shore of Pleasant Lake in Northwood. A gravel road (Steele Road) ran from a culvert at the northeasterly corner of Steele's property along the shore of the lake and curved onto a small peninsula extending into the lake near land owned by the Clarks, his neighbors to the south.

In July of 1960, Norman Goff and Mr. and Mrs. McDuffee approached the defendant to purchase land next to the lake. Goff wanted a lot 150' x 400', and the McDuffees a lot 75' x 400'. All parties met at the premises to identify the land.

The record is unclear as to the starting point used in laying out the lots as plotted on defendant's exhibit A (attached hereto). The parties marked off the boundaries using a fifty-foot tape measure and iron pipes, and are in agreement that this procedure was at best rough and inaccurate. Mr. Steele testified that the first pipe set was at point C at the edge of a swamp. This bound was then measured to be 149 feet east of a pipe previously set at point A by Ernest Clark to designate the northwest corner of Clark land.

Westerly iron bounds were set on the easterly side of Steele Road at the southwest and northwest corners of the Goff lot and the northwest corner of the McDuffee lot. Easterly pipe bounds were also set at the northwest corner of the Goff lot and the northeast corner of the McDuffee lot. The easterly line was primarily measured by pacing. The south bound of the Goff lot and distances along the road were measured by tape. All information was given to Mrs. Steele, who drew a sketch of the lots and prepared two deeds.

The deed to the McDuffee lot (Lot 11), in pertinent part, reads as follows:

> A certain tract of land known as camp lot no. 11 on the east shore of Pleasant Lake said lot located in the Town of Northwood, Rockingham County and the State of New Hampshire.
>
> Bounded and described as follows: beginning at an iron pipe set on the east side of the road at the northwest corner of the Goff lot; thence in an easterly direction along said Goff lot four hundred (400) feet to an iron pipe set at the northeast corner of said Goff lot; thence in a northerly direction seventy-five (75) feet to an iron pipe driven in the ground; thence in a westerly direction four hundred (400) feet to an iron pipe set beside road way near the culvert; thence in a southerly direction along road way seventy-five (75) feet to first mentioned bound, a pipe set beside of road.
>
> This lot is conveyed with a right of way to the lake.

The deed to the Goff lot (Lots 12 A & B), in pertinent part, reads as follows:

> A certain tract of land known as camp lot No. 12 on the east end of Pleasant Lake, said lot located in the Town of Northwood, Rockingham County and State of New Hampshire, bounded and described as follows:
>
> Beginning at an iron pipe set in edge of swamp one hundred forty-nine (149) feet from an iron pipe set at high water line on the northwest corner of the Stella Clark lot; thence along the north line of said Clark lot in an easterly direction four hundred (400) feet to an iron pipe set at corner of said lot near the northeast corner of Clark lot; thence in a northerly direction one hundred fifty (150) feet to an iron pipe set in ground at the southeast corner of the F. Lane McDuffee lot, thence in a westerly direction four hundred (400) feet along the McDuffee lot to an iron pipe set beside the road at the southwest corner of said McDuffee lot; thence in a southerly direction on the east side of the road one hundred forty-eight (148) feet to first mentioned bound.
>
> The lot is conveyed with a right of way to the lake.

Defendant Steele retained ownership of all land lying between the lake and the westerly boundary of the lots which fronted on Steele Road, but all the parties joined in the expense and effort of filling in and improving the road in front of lots 11 and 12 B.

In 1960, Goff built a tent platform in the northwesterly corner of the conveyed premises. He made continuous improvements thereon, and eventually completed a camp approximately 24' x 30' in size.

In 1966, Goff conveyed the entire tract (Lots 12 A & B) to his sister, Mildred Goff and May F. Meyer, who in turn conveyed the same premises to the McDuffees in 1968. Claire McDuffee, who became sole owner, sold the parcel designated as Lot 12 A to the plaintiff Frances Pugliese in 1970. The deed conveying the 80' x 400' parcel reads in pertinent part as follows:

> A certain tract of land, with the buildings thereon, situated in Northwood, in the County of Rockingham and State of New Hampshire being a part of Camp Lot #12 on the east side of Pleasant Lake in said Northwood, bounded and described as follows:
>
> Beginning at an iron pipe set in edge of swamp One Hundred Forty-nine feet (149') from an iron pipe set at high

water line on the northwest corner of the Stella Clark lot; thence along the north line of the said Clark lot in an easterly direction Four Hundred feet (400') to an iron pipe set at corner of said lot near the northeast corner of said Clark lot; thence in a northerly direction Eighty feet (80') to a bound at other land of Grantor; thence in a westerly direction on a line parellel with said Clark lot Four Hundred feet (400') along other land of Grantor to a bound beside the road; thence in a southerly direction on the east side of the road Eighty feet (80') to the first mentioned bound. This lot is conveyed with a right of way to the Lake.

Being a part of the premises conveyed to me by F. Lane McDuffee by his Quitclaim Deed dated March 13, 1969 and recorded in Rockingham County Records, Lib 1974, Fol 275.

Mrs. McDuffee testified that during the time she owned Lot 12 A, she became familiar with the location of the pipe at point C and was aware that the front of the cottage protruded over the Steele boundary line by about two feet. She remembered that in June of 1971, at plaintiff's request, they had discussed the boundary and together walked the line between points C and H.

During the summer of 1970, the plaintiff added a ten-foot porch to the front and north sides of the cottage. This construction prompted a discussion between Mr. Steele and Mr. Pugliese about a possible encroachment of the boundary line. Steele testified that he showed plaintiff's husband the iron pin at point C. This pipe subsequently disappeared and the record suggests this occurred when the plaintiff, without authorization from either Steele or the State, filled in the swampy terrain in that area.

In the fall of 1974, the cottage was totally destroyed by fire. The plaintiff began to rebuild by laying a new foundation at the same location as that of the old structure. On March 13, 1975, Mr. & Mrs. Pugliese appeared before the defendant town planning board to obtain a building permit. Plaintiff claims that because she was mistaken as to the width of her lot, she misrepresented to the town officials that the dimension was 150' rather than the actual 80'. Mr. Steele complained, and at a meeting with town officials and the plaintiff on March 28, 1975, the true size of the lot was confirmed and the board issued a cease-and-desist order to stop construction. On the advice of her then attorney, plaintiff ignored the order and continued to build. After a series of legal maneuvers, the town sought an injunction to enjoin construction and on May 19, 1975, the plaintiff

signed a stipulation that no further construction was to take place. On October 25, 1975, the town issued an order to the plaintiffs to vacate the premises.

Under date of April 29, 1975, the plaintiff filed a "Petition for Restraining Order and Order to Show Cause" against the defendant town planning board, seeking damages, relief from the cease-and-desist order, and revocation of the building permit. The town instituted a cross-petition for temporary and permanent injunctions.

On June 27, 1975, a "Petition to Quiet Title" was brought against the defendant, James M. Steele. The plaintiff, in addition to the quieting of title, sought substantial consequential and exemplary damages.

The trial court, assisted by a view, plans, overlays, photographs, results of surveys, and testimony from experts and other witnesses, made the following finding:

> Based upon a consideration of all the evidence, this Court finds that the boundaries of the Pugliese property are determinable by reference to Defendant's Exhibit A when read in conjunction with the deed from Claire McDuffee to Frances Pugliese (Plaintiff's Exhibit No. 11) as follows:

> Beginning at an iron pipe (C) set in edge of swamp one hundred forty-nine feet (149′) from an iron pipe (A) set at highwater line on northwest corner of the Stella Clark Lot;

> Thence along a north line of said Clark Lot in an easterly direction four hundred feet (400′) to an iron pipe (in the absence of a pipe, the Court finds this to be point "E" on Defendant's Exhibit (A)[sic] set at corner of said lot near the northeast corner of said Clark lot;

> Thence in a northerly direction Eighty Feet (80′) to a bound (the Court finds this to be point "G" on Defendant's Exhibit A) at other land of Grantor;

> Thence in a westerly direction on a line parallel with said Clark Lot four hundred feet (400′) along other land of Grantor to a bound (the Court finds this to be point "H" on Defendants Exhibit A) beside the road;

> Thence in a southerly direction on the east side of the road eighty feet (80′) to the first mentioned bound (C).

> Plaintiff's Exhibit No. 11 and Defendant's Exhibit A are made a part of this decree. (On file in the office of the Clerk of the Superior Court.)

The court then entered the following rulings and decree:

> 1. In accordance with the above Findings, to the extent Plaintiff's building extends or otherwise protrudes beyond

her boundaries on to the land of Steele, plaintiff has 60 days in which to remove said building from the Steele land.

2. Any building permit presently issued to the plaintiff is suspended and the question of a new building permit and/or variance is remanded to the Town of Northwood for such further action and disposition as is provided for under the zoning laws.

3. Damages in the sum of $500.00 each are awarded to Steele and the Town of Northwood against the plaintiff Pugliese.

The parties filed a reasonably modest but adequate number of requests for findings of fact and rulings of law. The court did not specifically address each numbered request but rather rendered its decision in narrative form. The plaintiff first argues that the court failed to comply with RSA 491:15, which reads as follows:

Findings. The court or justice trying causes . . . shall, if either party request it, give his decision in writing, stating the facts found and his rulings of law, which shall be filed and recorded.

Plaintiff agrees that this statute does not require specific rulings on every request filed, and is complied with "if the trial court files in narrative form the findings of essential facts which are sufficient to support his decision." *R. J. Berke & Co., Inc. v. J. P. Griffin, Inc.*, 116 N.H. 760, 767, 367 A.2d 583, 588 (1976); *Kopka Real Estate, Inc. v. MacLeod*, 119 N.H. 547, 404 A.2d 298 (1979); *Cote v. Eldeen*, 119 N.H. 491, 403 A.2d 419 (1979). She argues, however, that the instant decision does not reveal the basic facts from which the ultimate conclusions were drawn. We disagree. "While this court has repeatedly recognized the need for basic findings supported by the record, it has not mandated detailed and specific reasons for the basic findings." *Society for the Protection of New Hampshire Forests v. Site Evaluation Committee*, 115 N.H. 163, 173, 337 A.2d 778, 786 (1975). A review of the plaintiff's requests and a comparison with the narrative opinion of the court convince us that the basis for the court's decision is apparent and enables adequate judicial review. *See Public Serv. Co. of N.H. v. Town of Ashland*, 117 N.H. 635, 377 A.2d 124 (1977).

"The location of the monuments and the determination of a boundary conforming to the calls in the deed were questions of fact for the master, and as they are supported by the evidence they must stand." *Seely v. Hand*, 119 N.H. 303, 307, 402 A.2d 162, 166 (1979). We hold that a review of the evidence supports the court's findings as to

the location of the boundaries and we will not disturb them on appeal.

The plaintiff next questions the court's decree ordering the removal of her building from Steele land as being unsupported by the evidence and lacking in any express finding by the court. Relying on *Johnson v. Shaw*, 101 N.H. 182, 137 A.2d 399 (1957), she argues that such relief is a peculiar and extraordinary power to be exercised only after a balancing of the equities, and only when supported by express findings by the court that such relief is appropriate in view of the circumstances of the particular case.

In the instant case, no finding was entered that injunctive relief would be equitable in view of all the circumstances. Such a finding is not mandated, however. In the very case relied on by the plaintiff, we have held that, when warranted by the record, "[a] finding to that effect would ordinarily be implied, in the absence of indication that it was not in fact made." 101 N.H. at 189, 137 A.2d at 403; "In the absence of specific findings, the trial court is presumed to have made all findings necessary to support its decree." *LePage v. L'Heureux*, 119 N.H. 201, 202, 399 A.2d 977, 978 (1979); *see Belletete's Inc. v. Aldrich*, 117 N.H. 780, 378 A.2d 1373 (1977).

Even though construction continued after the dispute arose and the town issued "cease and desist" orders, the plaintiff submits that this was done on advice of her then counsel. She proposes that, under these circumstances of "good faith," equity should not assume a punitive position but should balance the equities, *i.e.*, weigh the relative hardship to the plaintiff against the minimal loss to the defendant. *See Wason v. Sanborn*, 45 N.H. 169 (1868); *Hunter v. Carroll*, 64 N.H. 572, 15 A. 17 (1888); *Dana v. Craddock*, 66 N.H. 593, 32 A. 757 (1891). Furthermore, the plaintiff claims that the decree is oppressive and inequitable since there is no evidence that the defendant suffered material damage. She seeks a remand to the trial court for the entry of "requisite findings" to be made after an evidentiary hearing comparing the cost of removing a substantial structure to the damages sustained by the defendant because of a slight encroachment on his land.

 The record contains ample evidence indicating that the plaintiff deliberately acted with knowledge of all the circumstances and that hardship, if any exists, was self-created. As we held in *Mills v. Manchester*, 109 N.H. 293, 295, 249 A.2d 679, 681 (1969), "if there is any hardship, it is self-created with knowledge of the restrictions. Such action cannot be made 'the fulcrum to lift those limitations' imposed by the ordinance." The evidence did not compel a finding that the plaintiff acted in good faith.

"There is no reason . . . to assume that . . . the Trial Court failed to weigh the factors which enter into a determination of whether an injunction should issue." *Margeson v. Ladd*, 108 N.H. 233, 236, 231 A.2d 638, 641 (1967). We cannot say, on the record before us, that the entry of the removal order was erroneous as a matter of law and we therefore sustain the trial court.

The final question concerns the award of $500 in damages to each of the defendants. The pleadings disclose that defendant Steele did request reasonable attorney fees and costs, but except for the general boiler-plate pleadings of "for such other relief as may be deemed just," neither defendant sought damages.

The plaintiff argues that "there is no basis in law or the evidence to support an award of damages." The defendants concede that the court's decree "is unclear since neither defendant specifically requested money damages," but argue that damages can be justified as either attorney fees or nominal damages.

"It is general law that one who claims damages has the burden of proof. He must by a preponderance of the evidence show that the damages which he seeks were caused by the alleged wrongful act and he must show the extent and amount of such damages." *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977).

■ Nominal damages present an exception to the general rule. They are recoverable whenever there has been a breach of a legal duty or invasion of a legal right and no actual damage resulted or was proved. *Blodgett v. Stone*, 60 N.H. 167 (1880). *See generally* 22 AM. JUR. 2d *Damages* §§ 5–7, at 20–23 (1965). The law, however, "implies the smallest appreciable quantity. One dollar is the amount usually adjudged where only nominal damages are allowed. A considerable amount—as, for example $100 or $200—is a substantial recovery and does not come within the definition of nominal damages. . . ." *Id.* § 6, at 22.

■ In the instant case, an examination of the court's findings, its decree and of the record itself, reveals no mention or evidence of damages either claimed, introduced or proven by the defendants. The court's award of "Damages in the sum of $500.00 each to . . . [the defendants] against the plaintiff . . ." is unexplained. "In reviewing the award made . . . , this court must view the evidence in a light most favorable to the party which prevailed. . . ." *Dana A. Wein & Sons v. Keller*, 118 N.H. 545, 547, 391 A.2d 878, 880 (1978). The verdict, however, must be supported by the record below or it cannot stand. We hold that the record does not support the award as either specific or nominal damages.

Defendant Steele's alternative argument is that the award of damages constituted counsel fees. The award of counsel fees has been dealt with extensively by this court. "The law is well settled . . . that there can be no recovery of counsel fees from the adverse party to a cause in the absence of statutory authorization, agreement between the parties, or some established exception." *Utica Mutual Ins. Co. v. Plante*, 106 N.H. 525, 526, 214 A.2d 742, 743 (1965); *Morse v. Ford*, 118 N.H. 280, 281, 385 A.2d 229, 230 (1978). However, "[e]xceptions to the general rule that parties pay their own counsel fees have been judicially fashioned in the past. These exceptions are flexible, not absolute, and have been extended on occasion." *Harkeem v. Adams*, 117 N.H. 687, 690, 377 A.2d 617, 619 (1977) (citations omitted).

■ A review of our cases discloses that before a *Harkeem* exception to the general rule may be carved out, it must be supported by a specific finding of bad faith, such as obstinate, unjust, vexatious, wanton, or oppressive conduct. *Paquette v. St. Clair*, 119 N.H. 404, 402 A.2d 182 (1979); *St. Germain v. Adams*, 117 N.H. 659, 377 A.2d 620 (1977); *Griffin v. N.H. Dept. of Emp. Sec.*, 117 N.H. 108, 370 A.2d 278 (1977); *see Harrington v. N.H. Dept. of Emp. Sec.*, 119 N.H. 517, 403 A.2d 432 (1979) (denial of counsel fees on finding an absence of bad faith, vexatious, wanton, or oppressive action); *Tuttle v. Palmer*, 118 N.H. 553, 392 A.2d 574 (1978) (award of counsel fees to plaintiff, for defense counsel's failure to comply with court rule); *Munson v. Raudonis*, 118 N.H. 474, 387 A.2d 1174 (1978) (liberal compensatory damages allowed only upon proof of wanton, malicious, or oppressive conduct).

The present case does not fall within any of the categories enumerated herein. The trial court's award of damages is not supported by the record below and therefore cannot stand.

*Exceptions overruled in part; sustained in part.*

GRIMES, J., did not sit; the others concurred.

Pleasant Lake

Shore line

STEELE ROAD

Lot-11

Lot-12B

Lot-12A

36 rods by Deed

To Rt 107

7514D overlay onto 7514B